## WILLIAMSON, ATTORNEY GENERAL OF OKLAHOMA, ET AL. v. LEE OPTICAL OF OKLAHOMA, INC. ET AL.

NO. 184.

Argued March 2, 1955.—Decided March 28, 1955.

*James C. Harkin,* Assistant Attorney General of Oklahoma, argued the cause for appellants in No. 184 and appellees in No. 185. With him on the brief were *Mac Q. Williamson,* Attorney General, *Fred Hansen,* First Assistant Attorney General, and *Leroy Powers. Edmund G. Brown,* Attorney General of California, and *Eimo G.*

*Funke,* Assistant Attorney General, were of counsel on the brief.

*Dick H. Woods* argued the cause for appellees in No. 184 and appellants in No. 185. With him on the brief were *Duke Duvall* and *John M. Phillips.*

*Philip B. Perlman* argued the cause for the American Optometric Association, Inc., as *amicus curiae,* urging reversal in No. 184 and affirmance in No. 185. With him on the brief were *Ellis Lyons* and *William P. MacCracken, Jr.*

By special leave of Court, *Herbert A. Bergson* argued the cause and filed a brief for the Guild of Prescription Opticians of America, Inc. et al., as *amici curiae,* urging affirmance in No. 184.

Briefs of *amici curiae* urging reversal in No. 184 and affirmance in No. 185 were filed for the States of Arkansas, by *Tom Gentry,* Attorney General, *James L. Sloan,* Assistant Attorney General, and *Carl Langston;* California, by *Edmund G. Brown,* Attorney General, *E. G. Funke,* Assistant Attorney General, and *Dan Kaufmann,* Deputy Attorney General; Kansas, by *Harold R. Fatzer,* Attorney General, and *Paul E. Wilson,* First Assistant Attorney General; and Mississippi, by *J. P. Coleman,* Attorney General, and *Richard A. Billups, Jr.,* Special Assistant Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This suit was instituted in the District Court to have an Oklahoma law (59 Okla. Stat. Ann. §§ 941–947, Okla. Laws 1953, c. 13, §§ 2–8) declared unconstitutional and to enjoin state officials from enforcing it (28 U. S. C. §§ 2201, 2202, 2281) for the reason that it allegedly violated various provisions of the Federal Constitution. The matter was heard by a District Court of three judges,

as required by 28 U. S. C. § 2281. That court held certain provisions of the law unconstitutional. 120 F. Supp. 128. The case is here by appeal, 28 U. S. C. § 1253.

The District Court held unconstitutional portions of three sections of the Act. First, it held invalid under the Due Process Clause of the Fourteenth Amendment the portions of § 2 which make it unlawful for any person not a licensed optometrist or ophthalmologist to fit lenses to a face or to duplicate or replace into frames lenses or other optical appliances, except upon written prescriptive authority of an Oklahoma licensed ophthalmologist or optometrist.[1]

---

[1] Section 2 reads as follows:

"It shall be unlawful for any person, firm, corporation, company, or partnership not licensed under the provisions of Chapter 11 or Chapter 13 of Title 59, Oklahoma Statutes 1951, to fit, adjust, adapt, or to in any manner apply lenses, frames, prisms, or any other optical appliances to the face of a person, or to duplicate or attempt to duplicate, or to place or replace into the frames, any lenses or other optical appliances which have been prescribed, fitted, or adjusted for visual correction, or which are intended to aid human vision or to give any treatment or training designed to aid human vision, or to represent or hold himself out to the public as being qualified to do any of the acts listed in this Section, except that persons licensed under the provisions of Chapters 11 or 13 of Title 59, Oklahoma Statutes 1951 may in a written prescription, or its duplicate, authorize any optical supplier to interpret such prescription, and who in accordance therewith may measure, adapt, fit, prepare, dispense, or adjust such lenses, spectacles, eye glasses, prisms, tinted lenses, frames or appurtenances thereto, to the human face for the aid or correction of visual or ocular anomalies of the human eye; and may continue to do the said acts on the aforesaid written prescription, or its duplicate, provided, however, that the physician or optometrist writing such prescription shall remain responsible for the full effect of the appliances so furnished by such other person. Provided that this Section shall not prevent a qualified person from making repairs to eye glasses."

Chapter 11, Title 59, Okla. Stat. 1951, provides for the licensing of ophthalmologists and other doctors. Chapter 13 provides for the certification of optometrists.

An ophthalmologist is a duly licensed physician who specializes in the care of the eyes. An optometrist examines eyes for refractive error, recognizes (but does not treat) diseases of the eye, and fills prescriptions for eyeglasses. The optician is an artisan qualified to grind lenses, fill prescriptions, and fit frames.

The effect of § 2 is to forbid the optician from fitting or duplicating lenses without a prescription from an ophthalmologist or optometrist. In practical effect, it means that no optician can fit old glasses into new frames or supply a lens, whether it be a new lens or one to duplicate a lost or broken lens, without a prescription. The District Court conceded that it was in the competence of the police power of a State to regulate the examination of the eyes. But it rebelled at the notion that a State could require a prescription from an optometrist or ophthalmologist "to take old lenses and place them in new frames and then fit the completed spectacles to the *face* of the eyeglass wearer." 120 F. Supp., at 135. It held that such a requirement was not "reasonably and rationally related to the health and welfare of the people." *Id.*, at 136. The court found that through mechanical devices and ordinary skills the optician could take a broken lens or a fragment thereof, measure its power, and reduce it to prescriptive terms. The court held that "Although on this precise issue of duplication, the legislature in the instant regulation was dealing with a matter of public interest, the particular means chosen are neither reasonably necessary nor reasonably related to the end sought to be achieved." *Id.*, at 137. It was, accordingly, the opinion of the court that this provision of the law violated the Due Process Clause by arbitrarily interfering with the optician's right to do business.

We think the due process question is answered in principle by *Roschen* v. *Ward,* 279 U. S. 337, which upheld a

New York statute making it unlawful to sell eyeglasses at retail in any store, unless a duly licensed physician or optometrist were in charge and in personal attendance. The Court said, ". . . wherever the requirements of the Act stop, there can be no doubt that the presence and superintendence of the specialist tend to diminish an evil." *Id.*, at 339.

The Oklahoma law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement. It appears that in many cases the optician can easily supply the new frames or new lenses without reference to the old written prescription. It also appears that many written prescriptions contain no directive data in regard to fitting spectacles to the face. But in some cases the directions contained in the prescription are essential, if the glasses are to be fitted so as to correct the particular defects of vision or alleviate the eye condition. The legislature might have concluded that the frequency of occasions when a prescription is necessary was sufficient to justify this regulation of the fitting of eyeglasses. Likewise, when it is necessary to duplicate a lens, a written prescription may or may not be necessary. But the legislature might have concluded that one was needed often enough to require one in every case. Or the legislature may have concluded that eye examinations were so critical, not only for correction of vision but also for detection of latent ailments or diseases, that every change in frames and every duplication of a lens should be accompanied by a prescription from a medical expert. To be sure, the present law does not require a new examination of the eyes every time the frames are changed or the lenses duplicated. For if the old prescription is on file with the optician, he can go ahead and make the new fitting or duplicate the lenses. But the law need not be in every respect logically consistent with its aims

to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. See *Nebbia* v. *New York,* 291 U. S. 502; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379; *Olsen* v. *Nebraska,* 313 U. S. 236; *Lincoln Union* v. *Northwestern Co.,* 335 U. S. 525; *Daniel* v. *Family Ins. Co.,* 336 U. S. 220; *Day-Brite Lighting, Inc.* v. *Missouri,* 342 U. S. 421. We emphasize again what Chief Justice Waite said in *Munn* v. *Illinois,* 94 U. S. 113, 134, "For protection against abuses by legislatures the people must resort to the polls, not to the courts."

Secondly, the District Court held that it violated the Equal Protection Clause of the Fourteenth Amendment to subject opticians to this regulatory system and to exempt, as § 3 of the Act [2] does, all sellers of ready-to-wear glasses.

---

[2] Section 3 reads as follows:

"It shall be unlawful for any person, firm, company, corporation or partnership to solicit the sale of spectacles, eye glasses, lenses, frames, mountings, prisms or any other optical appliances or devices, eye examinations or visual services, by radio, window display, television, telephone directory display advertisement, or by any other means of advertisement; or to use any other method or means of baiting, persuading, or enticing the public into buying spectacles, eye glasses, lenses, frames, mountings, prisms, or other optical appliances for visual correction. Provided, however, that the provisions of this Act shall not render any newspaper or other advertising media liable for publishing any advertising furnished them by a vendor of said commodity or material; nor shall anything in this Act prevent ethical education publicity or advertising by legally qualified health groups that does not violate presently existing laws of Oklahoma, nor prevent the proper use of ethical, professional notices. Nothing in this Act

The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. *Tigner* v. *Texas,* 310 U. S. 141. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler* v. *Dental Examiners,* 294 U. S. 608. The legislature may select one phase of one field and apply a remedy there, neglecting the others. *A. F. of L.* v. *American Sash Co.,* 335 U. S. 538. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here. For all this record shows, the ready-to-wear branch of this business may not loom large in Oklahoma or may present problems of regulation distinct from the other branch.

Third, the District Court held unconstitutional, as violative of the Due Process Clause of the Fourteenth Amendment, that portion of § 3 which makes it unlawful "to solicit the sale of . . . frames, mountings . . . or any other optical appliances."[3] The court conceded that state regulation of advertising relating to eye examinations was a matter "rationally related to the public health and welfare" (120 F. Supp., at 140) and therefore subject to regulation within the principles of *Semler* v. *Dental Examiners, supra.* But regulation of the advertising of eyeglass frames was said to intrude "into a mercantile field only casually related to the visual care of the public"

---

shall prohibit the sale of ready-to-wear glasses equipped with convex-spherical lenses nor sunglasses equipped with plano lenses nor industrial glasses and goggles with plano lenses used for industrial eye protection when sold as merchandise at any established places of business and where the selection of the glasses is at the discretion of the purchaser."

[3] See note 2, *supra.*

and restrict "an activity which in no way can detrimentally affect the people." 120 F. Supp., at 140–141.[4]

An eyeglass frame, considered in isolation, is only a piece of merchandise. But an eyeglass frame is not used in isolation, as Judge Murrah said in dissent below; it is used with lenses; and lenses, pertaining as they do to the human eye, enter the field of health. Therefore, the legislature might conclude that to regulate one effectively it would have to regulate the other. Or it might conclude that both the sellers of frames and the sellers of lenses were in a business where advertising should be limited or even abolished in the public interest. *Semler* v. *Dental Examiners, supra.* The advertiser of frames may be using his ads to bring in customers who will buy lenses. If the advertisement of lenses is to be abolished or controlled, the advertising of frames must come under the same restraints; or so the legislature might think. We see no constitutional reason why a State may not treat all who deal with the human eye as members of a profession who should use no merchandising methods for obtaining customers.

Fourth, the District Court held unconstitutional, as violative of the Due Process Clause of the Fourteenth Amendment, the provision of § 4 of the Oklahoma Act which reads as follows:

"No person, firm, or corporation engaged in the business of retailing merchandise to the general public

---

[4] The court also said:

"Advertising directed exclusively at this feature of eye wear can have no deleterious effect on the public, inasmuch as it has no influence on the *prospective* wearer of eyeglasses, and to the *present* wearer (a person already examined by a licensed professional) is but a mere piece of merchandise.

"The dispensing optician, a merchant in this particular, cannot arbitrarily be divested of a substantial portion of his business upon the pretext that such a deprivation is rationally related to the public health." 120 F. Supp., at 142.

"shall rent space, sublease departments, or otherwise permit any person purporting to do eye examination or visual care to occupy space in such retail store."

It seems to us that this regulation is on the same constitutional footing as the denial to corporations of the right to practice dentistry. *Semler* v. *Dental Examiners, supra,* at 611. It is an attempt to free the profession, to as great an extent as possible, from all taints of commercialism. It certainly might be easy for an optometrist with space in a retail store to be merely a front for the retail establishment. In any case, the opportunity for that nexus may be too great for safety, if the eye doctor is allowed inside the retail store. Moreover, it may be deemed important to effective regulation that the eye doctor be restricted to geographical locations that reduce the temptations of commercialism. Geographical location may be an important consideration in a legislative program which aims to raise the treatment of the human eye to a strictly professional level. We cannot say that the regulation has no rational relation to that objective and therefore is beyond constitutional bounds.

What we have said is sufficient to dispose of the appeal in No. 185 from the conclusion of the District Court that that portion of § 3 which makes it unlawful to solicit the sale of spectacles, eyeglasses, lenses, and prisms by the use of advertising media is constitutional.

The other contentions urged by appellants in No. 185 are without merit.

*Affirmed in part and reversed in part.*

MR. JUSTICE HARLAN took no part in the consideration or decision of these cases.