**PATTERSON DRUG COMPANY, d/b/a Revco Drug Centers, a Virginia corporation, et al., Plaintiffs,**

v.

**Charles F. KINGERY et al., Defendants.**

**Civ. A. No. 68–C–46–L.**

United States District Court
W. D. Virginia,
Lynchburg Division.

Sept. 16, 1969.

Lapsley W. Hamblen, Jr., Caskie, Frost, Davidson & Hobbs, Lynchburg, Va., Ernest C. T. Santora, John E. Purdy, Alan Arnold, Lane, Krotinger, Santora, Stone & Purdy, Cleveland, Ohio, for plaintiffs.

Robert Y. Button, Atty. Gen., of Virginia, Richard N. Harris, Anthony F. Troy, Asst. Attys. Gen., Richmond, Va., for defendants.

Francis B. Burch, Atty. Gen. of Maryland, Robert F. Sweeney, Deputy Atty. Gen., Baltimore, Md., Helgi Johanneson, Atty. Gen. of North Dakota, Bismarck, N. D., Duke W. Dunbar, Atty. Gen. of Colorado, James K. Kreutz, William Tucker, Asst. Attys. Gen., Denver, Colo., amicus curiae.

Before BUTZNER, Circuit Judge, DALTON, Chief Judge, Western District of Virginia, and KELLAM, District Judge, Eastern District of Virginia.

**BUTZNER, Circuit Judge:**

The Patterson Drug Company, doing business in Virginia as Revco Drug Centers, and Donald J. Deaton, a pharmacist in charge of one of Revco's stores, seek an injunction under 28 U.S.C. sec. 2281 to restrain enforcement of a statute which defines unprofessional conduct of a pharmacist. We find the statutory prohibition against advertising to be valid, but we hold that the statute cannot be employed to fix the prices of prescription drugs.

In 1967, Patterson became a wholly owned subsidiary of Revco D. S., Inc., which does business as a discount drug chain. The State Board of Pharmacy of Virginia, whose officers and members are named as defendants to this action, threatened to revoke the licenses of pharmacists employed in any Revco Drug Center that advertised discounts or savings on prices of prescription drugs. The Board also forbade use of the slogan, "Every Day is Savings Day on Everything at Revco," and "America's only Total Discount Drug Chain." These practices, the Board charged, constituted unprofessional conduct as defined by statute and an administrative regulation which preceded it.[1] The statute upon which the Board now relies is Va.Code Ann. sec. 54–426.1 (Supp.1968), which provides in part:

"Any pharmacist shall be considered guilty of unprofessional conduct who

\* \* \* \* \* \*

"(3) issues, publishes, broadcasts by radio or otherwise, or distributes or uses in any way whatsoever advertising matter in which grossly improbable or extravagant statements are made about his professional service which have a tendency to deceive or defraud the public, contrary to the public health and welfare; or

"(4) issues, publishes, advertises or promotes, directly or indirectly, in any manner whatsoever, any amount, price, fee, premium, discount, rebate or credit terms for professional services or for drugs containing narcotics or for any drugs which may be dispensed only by prescription."

Alleging that the Board's enforcement has caused it to lose substantial business, Revco contends that the statute violates the First Amendment, the due process and equal protection clauses of the Fourteenth Amendment, and that it imposes a burden on interstate commerce and regulates matters which are the subject of exclusive federal regulation.

Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), and Semler v. Oregon State Bd. of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935), sustain the statutory prohibition against advertising.[2] In *Williamson* an

[1.] In 1967 the Board was advised by an Assistant Attorney General that its regulation defining unprofessional conduct was an unauthorized extension of the statutory definition as it was then written and that the statute could not be construed to prohibit the advertising which the Board had condemned. The following year Va.Code Ann. sec. 54–426.1 was amended by the addition of subsection (4), and the Board no longer relies on the administrative regulation.

[2.] Statutory bans against similar advertising exist in California, Connecticut, Louisiana, Maryland, Nebraska, Nevada, New Jersey, New York, North Dakota, Oklahoma, and Pennsylvania. Cal.Bus. & Prof.Code sec. 651 (1955); Conn.Gen. Stat.Ann. sec. 19–241 (1960); La.Rev. Stat. sec. 37:1225 (1964); Md.Ann.Code art. 43, sec. 266A (1965); Neb.Rev.Stat. sec. 71–148 (1966); Nev.Rev.Stat. secs. 639.261–639.263 (1967); N.J.Stat.Ann. sec. 45:14–12 (Supp.1966); N.Y. Education Law, McKinney's Consol.Laws, c. 16, sec. 6804(i) (d) (1953); N.D. Cent.Code sec. 43–15–10 (1960); Okla. Stat.Ann. tit. 59, sec. 736.1 (1963); and Pa.Stat.Ann. tit. 63, sec. 390–5(a) (9) (ii) (Supp. 1966).

optician complained that a statute forbidding the solicitation of the sale of eyeglass frames violated the due process clause of the Fourteenth Amendment. *Semler* concerns a similar complaint voiced by a dentist who objected to a statute that prohibited advertising the price of dental work. The Court in both instances upheld the constitutionality of the state laws. In *Williamson,* the Court observed that an eyeglass frame is not simply a piece of merchandise, but on the contrary it is designed to be used with lenses that affect the purchaser's health. The Court held that the legislature "might conclude that both the sellers of frames and the sellers of lenses were in a business where advertising should be limited or even abolished in the public interest." [3]

In *Semler,* the prohibition against advertising was upheld against the claim, also made and proved by Revco, that the advertisements were true. Revco emphasizes that *Semler* dealt with dentists who acknowledgedly practice a profession. Revco, therefore, seeks to avoid *Semler* by urging us to hold that pharmacy is not a profession. This argument is insufficient to invalidate the statute. Virginia has found: "The practice of pharmacy * * * [is] a professional practice affecting the public health, safety and welfare and is subject to regulation and control in the public interest." Va.Code Ann. sec. 54–399(a) (1967). To become a registered pharmacist, the applicant must graduate from an approved school of pharmacy, have a year's practical experience, and pass an examination. Va.Code Ann. secs. 54–421, 54–422 (1967). The Board is authorized to revoke a pharmacist's license for unprofessional conduct. Va.Code Ann. sec. 54–426 (1967).

Much of the evidence concerned the economics and responsibilities of the practice of pharmacy. Retail prices of prescription drugs are determined in various ways. Generally a percentage markup is added to the cost. The markup often is not uniform; it may vary with the quantity of the drug prescribed. Under some pricing systems a flat fee for the pharmacist's service is added to the retail price, but even when this is done, it is not ordinarily stated separately on the customer's bill. Almost invariably pharmacists are paid a regular salary that does not directly depend upon the number of prescriptions filled. Annual bonuses, however, are sometimes given which reflect sales of the prescription department. Pharmacists must have extensive knowledge of a wide range of drugs. Accuracy is essential; mistakes can be serious. A few prescriptions, but nevertheless a significant number, cannot be filled from drugs available in manufactured form, so the medicine must be compounded by the pharmacists. Some pharmacists, probably a minority, systematically monitor prescriptions by family records to avoid allergic reactions or the simultaneous use of antagonistic drugs, of which the patient's doctor may not be aware. Although monitoring is not completely effective because of the mobility of customers and the availability of nonprescription drugs which may be antagonistic, it is a benefit to the public.

From the evidence we find that dispensing prescription drugs af-

---

State courts have reached different conclusions about the constitutionality of prohibitions against advertising prices of prescription drugs. Compare Supermarkets Gen. Corp. v. Sills, 93 N.J.Super. 326, 225 A.2d 728 (1966) (statute held constitutional) with Stadnik v. Shell's City, Inc., 140 So.2d 871 (Fla.1962), and Fla. Bd. of Pharmacy v. Webb's City, Inc., 219 So.2d 681 (Fla.1969) (regulations and statute held unconstitutional). Administrative regulations have been held invalid on nonconstitutional grounds. Ore. Newspaper Publishers Ass'n v. Peterson, 244 Ore. 116, 415 P.2d 21 (1966); Op. Att'y Gen. of Missouri, August 7, 1961. See generally Regulation of Prescription Drug Discount Advertising, 24 Wash. & Lee L.Rev. 299 (1967).

3. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 490, 75 S.Ct. 461, 466 (1955).

fects the public health, safety and welfare. And we conclude that the state's classification and regulation of pharmacy as a professional practice is not arbitrary or invidious.

■ Nor is the statute invalidated because Revco's pharmacists, whose licenses are subject to revocation, do not control the corporation's advertising and pricing policy. The state's police power over pharmacies cannot be so simply circumscribed. Revco cannot insulate itself from regulation because it chooses to operate through corporate subsidiaries. Cf. Semler v. Oregon State Bd. of Dental Examiners, 294 U.S. 608, 611, 55 S.Ct. 570 (1935), and Roschen v. Ward, 279 U.S. 337, 49 S.Ct. 336, 73 L.Ed. 722 (1929).

■■ The fact that the advertising ban does not affect manufacturers and wholesalers of prescription drugs is of no legal significance. Their business differs from pharmacists' because they do not fill prescriptions for the public. Nor does the fact that pharmacists may advertise free prescription deliveries, or free coffee while awaiting the filling of prescriptions, render the prohibition on advertising prices invalid. In making its classifications, the legislature may address itself "to the phase of the problem which seems most acute to the legislative mind" without violating the equal protection clause of the Fourteenth Amendment. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461 (1955). Revco's allegation that the statute has not been enforced against other retail druggists is not supported by a preponderance of the evidence.

■ Revco also argues that the statute intrudes upon exclusive federal regulation under the Federal Trade Commission Act, 15 U.S.C. secs. 41–58, and the Communications Act of 1934, 47 U.S.C. secs. 151–609. In Head v. New Mexico Bd. of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), the Supreme Court held that the Communications Act did not prevent state prohibition of radio advertising of the price of

eyeglasses, and we find the reasoning of that case compelling here. As the Court stated at 374 U.S. 430, 83 S.Ct. 1763:

"In areas of the law not inherently requiring national uniformity, our decisions are clear in requiring that state statutes, otherwise valid, must be upheld unless there is found 'such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field.'"

Upon this reasoning, we also reject the claim that the Federal Trade Commission Act preempts state regulation of the promotion and sale of prescription drugs. Although Section 52 of the Act [15 U.S. C. sec. 52] forbids false advertising of drugs, this provision does not indicate "a congressional design to preempt the field." Nor is there conflict between this provision and the Virginia statute.

■ Revco's other grounds for invalidating the ban on prescription drug advertising have been rejected in cases we deem controlling. The Supreme Court has held that a statute prohibiting advertising of eyeglasses did not place an unconstitutional burden on interstate commerce. Head v. New Mexico Bd. of Examiners, 374 U.S. 424, 427, 83 S.Ct. 1759 (1963). And regulation of commercial advertising does not intrude upon First Amendment rights of free speech. Valentine v. Chrestensen, 316 U.S. 52, 54, 62 S.Ct. 920, 86 L.Ed. 1262 (1942); see New York Times Co. v. Sullivan, 376 U.S. 254, 265, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See generally The Regulation of Advertising, 56 Colum.L.Rev. 1018, 1069 (1956).

Revco proved that the Virginia Pharmaceutical Association, the Virginia Board of Pharmacy, and individual pharmacists lobbied for the 1968 amendment that proscribed advertising. And there can be no doubt that the amendment was designed primarily to regulate discount drug chains, including Revco. We have not overlooked the anticompetitive effect of the ban on advertising.

However, we are not empowered to determine whether the statute is wise or foolish, economically sound or improvident. Decision of these issues lies with the state legislature. Ferguson v. Skrupa, 372 U.S. 726, 729, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). It is enough for us to hold, as we do, that Virginia's prohibition against advertising the retail price of prescription drugs and the terms upon which they are sold is a constitutional exercise of the state's police power.

Revco charges, and the defendants deny, that the statute regulates prices for prescription drugs. Section 54–426.1(4) declares that a pharmacist shall be guilty of unprofessional conduct if he "issues * * * any * * * discount * * * for any drugs which may be dispensed only by prescription." Virginia's officials have read this statute literally. It has been held to bar giving a discount on prescription drugs billed to an institution,[4] and to ban Revco's grant of discounts to persons over 60 years of age.[5] Moreover, the State Board of Pharmacy has construed subsection (3) of 54–426.1 to prevent offering discounts or savings on prescription drugs.[6] We therefore sustain Revco's complaint that sec. 54–426.1(3) as interpreted by the Board, and sec. 54–426.1(4) on its face, and as interpreted, are used to regulate the price of prescription drugs.

The defendants assert that even if the statute fixes prices, it is nevertheless valid. We accept the major premise implicit in the defendants' argument—prescription drugs are so intimately related to the public health that the state can fix the prices at which they are sold without violating the due process clause of the Fourteenth Amendment. The exercise of comparable power over the prices of citrus fruit and milk has been upheld. Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774 (1940) (citrus fruit); Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (milk). And we perceive no sound reason why the principles underlying these cases cannot be applied to the sale of prescription drugs. It does not follow, however, that

4. On August 6, 1968 the Attorney General of Virginia wrote the Secretary of the Board of Pharmacy:
   "This is in reply to your letter of July 19, 1968, in which you present the following situation:
   " 'Section 54–426.1, paragraph 4, of the Code provides that any pharmacist shall be guilty of unprofessional conduct who issues, publishes, advertises, or promotes, directly or indirectly, in any manner whatsoever, any amount, price, fee, premium, discount, rebate or credit terms for professional services or for drugs containing narcotics or for any drugs which may be dispensed only by prescription.
   " 'By agreement a pharmacist will supply from his pharmacy drugs on prescriptions to patients of an institution and at the time of supplying, or at a fixed period, he bills the institution for the prescription drugs supplied less a predetermined per centage of the total bill.
   " 'We would appreciate your opinion as to whether or not the giving to the institution a per centage of the drug bill would be considered a discount or a rebate for professional services.'

   "It seems clear that the situation you present comes within the statutory prohibitions set out in the first paragraph of your letter and your question, therefore, is answered in the affirmative."

5. On June 27, 1968 the Secretary of the Board of Pharmacy wrote a Revco official:
   "Under the new law on unprofessional conduct, Section 54–426.1, which becomes effective June 28, 1968, it appears that the Senior Discount Prescription Plan could no longer be offered, irregardless of when the cards were issued.
   "In other words, cards already issued and in use would become invalid and further cards could not [be] used."

6. On November 17, 1967 the Secretary of the Board wrote a pharmacist in charge of one of Revco's stores, stating in part:
   "The position of the Board is that since a prescription does not have a fixed selling price, it is therefore impossible to offer a discount on prescriptions or a savings on prescriptions, or to state that you operate a Total Discount or a discount drug store."

sec. 54–426.1 is a valid price fixing statute. The Board's reliance upon *Mayo* illustrates both the strength and the weakness of its position. There a minimum price, related to the cost of production, was fixed by the Florida Citrus Commission. Similarly, the statute upheld in *Nebbia* authorized a milk control board to fix the maximum and minimum retail prices of milk after taking into consideration all conditions affecting the milk industry.

 In contrast, neither the Board of Pharmacy nor any other state agency has determined the retail price of prescription drugs which must be maintained without discount. Hence the price the statute seeks to preserve is so vague and uncertain that an offending pharmacist is denied due process of law. United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952). Nor can the statute be sustained on the theory that the prohibition against discounts simply prevents a pharmacist from selling at less than his listed retail price. The evidence discloses no adverse effect on the public health, safety, or welfare by the issuance of discounts to doctors, nurses, institutions, elderly persons, and employees. And the evidence fails to establish whether a discounted price is either more or less than the retail price charged by other pharmacists in the state. Because of these deficiencies in the proof, revocation of a pharmacist's license on the ground that he has sold prescription drugs to a class or classes of customers at less than he sells to others would be arbitrary and capricious.

Even though the price fixing function of the statute is invalid, it is possible to leave intact the other definitions of unprofessional conduct. It is likely that the legislature would have enacted the remaining portions of the statute without the invalid portion. Furthermore, "that which is left is fully operative as a law." Reagan v. Farmers Loan & Trust Co., 154 U.S. 362, 395, 14 S.Ct. 1047, 1053, 38 L.Ed. 1014 (1894). We therefore find it unnecessary to hold that the entire statute is unconstitutional. See Strawberry Hill Land Corp. v. Starbuck, 124 Va. 71, 97 S.E. 362, 364 (1918).

We will enjoin the Board from enforcing the statute to prohibit the issuance of discounts on the retail price of prescription drugs. In all other respects, the relief sought by Revco against the Board in the first four counts of the complaint is denied.[7] Revco also sued the Attorney General of Virginia, but the evidence discloses no case against him, and he is dismissed from the first four counts. Each party, having partly prevailed, shall bear its own costs.

---

7. A fifth count brought under Section 1 of the Sherman Act, 15 U.S.C. sec. 1, was severed. Decision on this count would have resulted in no judicial economy, nor would it have forestalled a decision on the constitutionality of the statute. Hobson v. Hansen, 256 F.Supp. 18, 20 (D.C. Cir. 1966). Moreover, Revco seeks treble damages in this count, a form of relief which a three-judge court is not empowered to grant under 28 U.S.C. sec. 2281.