**VIRGINIA CITIZENS CONSUMER COUNCIL, INC., et al., Plaintiffs,**

**v.**

**STATE BOARD OF PHARMACY, et al., Defendants.**

**Civ. A. No. 73–336–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 21, 1974.

James W. Benton, Jr., Hill, Tucker & Marsh, Richmond, Va., Raymond T. Bonner, Washington, D. C., for plaintiffs.

Vann H. Lefcoe, Asst. Atty. Gen. of Virginia, Richmond, Va., Anthony F. Troy, Washington, D. C., for defendants.

Before BRYAN, Senior Circuit Judge and MacKENZIE and MERHIGE, District Judges.

## OPINION OF THE COURT

BRYAN, Senior Circuit Judge:

A Virginia law [1] is here decried as unconstitutional,[2] as well as violative of Federal law [3], in imputing "unprofessional conduct" to any pharmacist who "publishes, advertises or promotes" in any manner the "price, fee . . . discount, rebate or credit terms . . . for any drugs which may be dispensed only by prescription". The State Board of Pharmacy may rescind the license of any pharmacist engaging in the forbidden activity. The result is that no such price dissemination prevails in Virginia. Declaration of its invalidity and injunction of its enforcement are requested of us [4]; we accede.

At once it must be emphasized that the plaint here is that of *consumers*, not the pharmacists. Again, this suit does not involve the illegitimate use of drugs, or even the free use of legitimate drugs, or the illegal procurement or disposal of them. Only professionally prescribed drugs compounded by professional pharmacists are the subject of this litigation, and then only their prices, entirely devoid of comment or advice as to their healing capabilities.

Plaintiffs comprise a resident of the State, suffering from a disease requiring her to take prescription drugs frequently, and unincorporated associations representing their respective groups who, in many instances, are dependent on prescription drugs. As to their standing to sue, see Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Defendants are the Board of Pharmacy, with its individual members, which is responsible for the enforcement of the Virginia law regulating the practice of pharmacy in Virginia.

Plaintiffs complain that the State law precludes them from information as to where prescription drugs may be bought at the least expense, and that there are costly disparities in the amounts charged therefor, but that without knowledge of these differences they cannot take advantage of the lower costs commensurate with their means. They further assert that the ages and physical infirmities of many of the individual plaintiffs prevent their ascertaining the most economical purchase; that a material part of elderly persons' income is laid out on medicine; that at many times the medicine prescribed is vital to their wellbeing; and that their finances may control where they can procure desperately needed drugs. Consequently, plaintiffs earnestly contend that the enactment is a substantial infringement of their privileges under the First Amendment in withdrawing from them accessibility to the benefits of price publications.

The facts just advanced—but not the legal conclusions—are not disputed. It is stipulated, too, that pharmacy is a profession, its licensing and practice demanding thorough collegiate academic application of several years in preparation for entrance into the professional study, with graduation from an accredited school of pharmacy. Expenditures annually for prescription drugs are vast, running into the billions of dollars. Prices therefor do in truth vary tremendously throughout the State. In substantiation the parties have stipulated:

> "22. (a) In Northern Virginia the price of 25 Darvon capsules (standard dosage) ranges from $2.35 to $3.65, a difference of 55%; the price of 40 Achromycin tablets (standard dosage) from $2.50 to $4.70, a difference of 90%; of 40 Tetracycline tablets (standard dosage) from $1.68 to $3.90, a difference of 132%.
>
> (b) In Richmond, the cost of 40 Achromycin tablets ranges from $2.59 to $6.00, a difference of 140%.

1. 1950 Code of Va., as amended (1972 Supp.), § 54–524.35(3).

2. First and Fourteenth Amendments.

3. 42 U.S.C. § 1983, providing right of action for deprivation of civil rights.

4. 28 U.S.C. § 2281—requiring 3-judge court for such an injunction.

(c) In the Newport News-Hampton, Virginia peninsula area the following variations exist:

(1) Tetracycline: $1.20 to $9.00, a 650% difference;

(2) Achromycin: $2.20 to $7.80, a 241% difference;

(3) Darvon: $1.90 to $4.70, a 147% difference."

Danger to the public would not be threatened by the advertisement of prescription drugs, the plaintiffs accent, because every sale must be accompanied by a prescription from a licensed physician. The medication would still be the result of the doctor's diagnosis of the patient. Furthermore, the drug would be the product of a rigidly licensed pharmacist. Consequently, the advertisement, it is further pressed, does not encourage the use of drugs, for they would not thereby become more readily obtainable through price publication. Thus, it is avouched that price advertisement does not either potentially or actually affect the health of the user.

### The Argument

Initially, Fourteenth Amendment due process protection was invoked by the plaintiffs on behalf of the consumer. This position is no longer pressed. In a written statement filed with the court at argument, the plaintiffs say they "have concluded that they should not pursue in this Court their position that the Virginia law which prohibits advertising of prescription drug price information violates the Fourteenth Amendment", citing as their reason North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973).[5]

However, a First Amendment safeguard, constrictive of the State through the Fourteenth, DeJonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1937), is interposed:

"[A State] shall make no law . . . abridging the freedom of speech, or of the press . . ."

to forestall Virginia's instant stricture. Here the plaintiffs reiterate the circumstances of the sick and needy patients who seek the price information to ease their suffering and perhaps aid their survival. Plaintiffs urge that the First Amendment assures its freedoms to the auditor and reader as stoutly as it does the speaker and writer. Kleindienst v. Mandel, 408 U.S. 753, 762–764, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

In rebuttal, defendants contend that the First Amendment does not shield commercial speech or writing, and that advertisement of prescription drug prices is a commercial publication, citing Valentine v. Chrestensen, 316 U.S. 52, 54, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). However, rejoin the consumers, the predominant factor here is that the barring of publication could retard access to a means of medical relief for the invalid and thus affront the First Amendment.

### The Point for Decision

The controversy here comes, therefore, to whether the State may legally exclude from publication prescription drug prices *not otherwise fairly available* to those consumers who vitally need the drugs, but who, because of disability, illness or poverty, can only afford the very lowest price.

### The Authorities

Validity of the Virginia law, say the defendants, is secured in the able opinion of Patterson Drug Company v. Kingery, 305 F.Supp. 821 (3-judge court, W.D.Va.1969). No infirmity is now ascribed to that decision, but notably there

---

5. "We [plaintiffs] do, however, wish to reserve such argument in order to urge before the Supreme Court (should this case be appealed) that the *North Dakota State Board of Pharmacy* case exempts only purely economic legislation from the scrutiny of the Fourteenth Amendment, and that the legislation at issue here, which significantly affects the health of the public must satisfy the real and substantial relation test." See, Statement of Plaintiffs' Position (December 11, 1973).

the suit was cast in a context quite the opposite of that pleaded here. In *Kingery*, the unsuccessful assailants were pharmacists, sellers of the drugs and, of course, theirs was a prima facie commercial approach. The opinion mentions the First Amendment only to note its inapplicability because the case involved commercial advertising. Consumers' consequences, though, understandably were not discussed since they were not raised.

Instantly, the actual suitors are consumers; their concern is fundamentally deeper than a trade consideration. While it touches commerce closely, the overriding worry is the hindrance to a means for preserving health or even saving life. Speaking of Valentine v. Chrestensen, supra, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262, the opinion in Pittsburgh Press Co. v. Human Relations Commission, 413 U.S. 376, 384, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) somewhat tempers the former's downright exclusion: "Subsequent cases have demonstrated, however, that speech is not rendered commercial by the mere fact that it relates to an advertisement". It adds that implicitly constitutional protection could be accorded where First Amendment interest "might arguably outweigh the governmental interest supporting" a prohibition. P. 389, 93 S.Ct. p. 2558.

Additionally, this cause has no design to curtail the State's discipline of pharmacies—the statute's evident aim. It was drawn with the pharmacy in mind, certainly not the needy consumer. Consideration by the courts of the consumers' necessities is thus not an intrusion upon the State's regulation of pharmacies, frowned upon in North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., supra. But even there the Court excepted those occasions where the State law would "run afoul" of constitutional prohibitions, of course including the First Amendment.

Florida, Maryland and Pennsylvania have fully removed the bars to the publication of prescription drug prices. Florida Board of Pharmacy v. Webb's City, Inc., 219 So.2d 681 (Fla.1969); Maryland Board of Pharmacy v. Sav-A-Lot, Inc., 270 Md. 103, 311 A.2d 242 (1973) and Pennsylvania State Board of Pharmacy v. Pastor, 441 Pa. 186, 272 A.2d 487 (1971).[6] The most trenchant relevancy and force of these precedents are their due acknowledgment and just accordance of the necessity of price information. These holdings are pro bono publico enunciations but nonetheless persuasive, though without constitutional footing.

We do not find adversely dispositive of the issue here, Head v. New Mexico Board of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935) or Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). State statutes, there approved, condemned generally advertisements of the door-to-door sale of eyeglasses with guarantees of satisfaction; advertisements of professional superiority of certain dentists and the carrying of their fees; and advertisements "soliciting" the sale of eyeglasses and frames by "baiting" and "enticing" the public into buying them.

Clearly these publications were ex facie suppressible under State police powers and the interdicting statutes unquestionable. Just as clearly, however, the Virginia statute in suit is not of this ilk. It excludes an advertisement of a named drug which has been written into an authentic prescription issued to a patient individually by his doctor to be filled only by a licensed pharmacist. The laws sustained in *Head*, *Semler* and *Williamson* surely did not encompass prescription holders like the claimants in this suit.

6. While the opinions in *Sav-A-Lot* and *Pastor* observe passim that the Federal courts no longer disapprove State economic legislation on substantive due process grounds, nothing is said in disparagement of the Federal courts' duty to preclude abrogations of Constitutional equal protection or freedom of press guarantees.

*Conclusion*

█ The right-to-know is the foundation of the First Amendment; it is the theme of this suit. Consumers are denied this right by the Virginia statute. It is on this premise that we grant the plaintiffs the injunction and the declaration they ask.

Why the customer is refused this knowledge is not convincingly explained by the State Board of Pharmacy and its members. Enforcement of the ban gives no succor to public health; on the contrary, access by the infirm or poor to the price of prescription drugs would be for their good. This information "serves as a tool to educate rather than deceive". Maryland Board of Pharmacy v. Sav-A-Lot, Inc., supra, 311 A.2d p. 248.

█ The belief that price advertising will inflate the market for the drugs is wholly untenable, since the medicine is controlled by prescriptions of physicians and so the sale of the drugs is not even at the druggists' will.

An order of injunction and a declaratory judgment will be entered as prayed in the complaint, with costs to the plaintiffs.