Carl E. **PERSON**, Plaintiff,

v.

The **ASSOCIATION OF the BAR OF the CITY OF NEW YORK**, Defendant.

No. 75C 987.

United States District Court, E. D. New York.

Nov. 19, 1975.

Motion for Order of Abstention or Stay March 4, 1976.

See also, D.C., 414 F.Supp. 139.

Carl E. Person, pro se.

White & Case, New York City, for defendant.

### MEMORANDUM

PLATT, District Judge.

Plaintiff has moved to convene a three-judge court under 28 U.S.C. §§ 2281 and 2284 alleging that he seeks an injunction restraining the enforcement of

(i) New York Judiciary Law §§ 90(2), 479, 482, 483, 485 and 495; and

(ii) Rules of the 1st and 2d Departments of the New York Supreme Court §§ 603.8, 603.10, 603.12, 691.8, 691.-10 and 691.12; and

(iii) Disciplinary Rules of the Code of Professional Responsibility 2–101, 2–102 and 2–105

to the extent that they prevent plaintiff from advertising his legal services insofar as they prohibit plaintiff from identifying his legal specialty or stating an hourly rate for his services in yellow page and newspaper advertising on the ground that they violate the First and Fourteenth Amendments to the United States Constitution.

#### The Complaint

Plaintiff alleges in his complaint that jurisdiction, which is not disputed, obtains under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

Plaintiff further alleges that he resides in Queens, New York, and various persons, including bar associations, courts and attorneys who are not made defendants in this action, participated as co-conspirators in the illegal acts that are charged in his complaint and that these co-conspirators include:

(1) American Bar Association (founded in 1878);

(2) The New York State Bar Association (founded in 1876);

(3) Appellate Division of the Supreme Court of the 1st Department in New York State;

(4) Appellate Division of the Supreme Court of the 2nd Department in New York State;

(5) Court of Appeals of New York State;

(6) Other bar associations and courts in New York State or throughout the United States which have adopted or are enforcing laws or rules which prohibit attorneys from any type of advertising for clients;

(7) Attorneys in the Eastern or Southern Districts of New York, elsewhere in New York State or elsewhere in the United States who have participated in the adoption or enforcement of laws or rules which prohibit attorneys from any type of advertising for clients; and

(8) Clients of any of the attorneys described in the preceding subparagraph (7) who give encouragement to the attorneys in their efforts to prevent advertising by attorneys for the

purpose of making it more difficult for poor and middle-class persons to enforce their rights against these clients.

Plaintiff goes on to allege that he was admitted to the bar in this State in 1962 and has practiced law continuously since said date; that from 1969 to date he has had at least 13 clients in the areas of antitrust and/or securities law who resided or had principal places of business outside of New York; that the quantum meruit value of plaintiff's legal services to these non-New York clients has exceeded $2,000,000 (performed for the most part on a contingent fee basis); that damages in such cases are alleged to have exceeded $100,000,000 in the aggregate, and that plaintiff in connection with such litigation has travelled to several States incurring disbursements on behalf of his clients in excess of $10,000.

Plaintiff claims further that he is the founder, sole shareholder and Director of Paralegal Institute, Inc., 132 Nassau Street, New York, New York, which since January of 1972 has trained approximately 800 paralegals with tuitions aggregating approximately $750,000; that many of these paralegals are performing work at an estimated average annual rate of pay of $12,000 per year, for an aggregate of $9,600,000 per year; that efficient use of a paralegal by attorneys depends to a considerable extent upon an attorney having a sufficient amount of repetitive legal business, which only the major law firms are able to obtain because of the size of their major clients, and that plaintiff as an individual practitioner and others similarly situated are unable to obtain a sufficient amount of such repetitive legal business so as to be in a position to employ paralegals efficiently unless permitted to advertise their legal services to the public on some reasonable basis.

Plaintiff further charges that the co-conspirator attorneys and their respective law firms which dominate the defendant and co-conspirator bar associations receive in the aggregate hundreds of millions or one or more billions of dollars each year for their legal representation of most of the 500 largest corporations in the country and that a substantial part of this figure of representation involves matters in or relating to interstate commerce, including the antitrust, securities, commercial banking and FTC fields; that the dollar amount of legal business lost to individual practitioners and small firms by reason of the enforcement of the laws prohibiting advertising amounts to hundreds of millions or one or more billions of dollars; and that reasonable advertising by attorneys would enable prospective clients to find and retain services of attorneys at prices they can afford.

The complaint further states that defendant has continually enforced the prohibition on advertising by attorneys practicing in New York City and that the Appellate Divisions for the 1st and 2d Departments have continuously upheld such prohibition with the result that all attorneys in the Metropolitan area are threatened with disbarment if they should advertise their legal services; that because of such prohibition there is an increased demand by the public for the establishment of law organizations to offer group legal services and prepaid legal insurance; that these methods of providing legal services to poor and middle class persons would not be necessary if attorneys were permitted to advertise on a reasonable basis and that these group legal services and prepaid legal insurance organizations constitute a competitive threat to individual practitioners and small law firms primarily because lawyers are not permitted to advertise whereas the law organizations are not so restricted and that plaintiff and others similarly situated are suffering economic losses and are being threatened with extinction because of the rule prohibiting any advertising by attorneys.

Plaintiff then charges that these restrictions injure the public as well as attorneys because of the higher prices clients are required to pay for legal services; but with sufficient repetitive legal business obtained from reasonable advertising, many attorneys making substantial use of paralegals could reduce the public's cost for high quality legal services in many areas of the law to

about $15 per hour; that plaintiff would like to advertise in the yellow pages under a classification of "antitrust lawyers" or "litigating attorneys" or similar classifications and would like to advertise in one or more newspapers under such type of classification and would like the option of advertising an hourly rate for his legal services.

The complaint finally alleges that "defendant's activities in enforcing the restrictions upon advertising by attorneys constitute 'state action' in violation of § 1983 of the Civil Rights Act (42 U.S.C. § 1983) by unduly limiting plaintiff's freedom of speech and by depriving plaintiff of the right to reasonably advertise his legal services without due process of law."

## Discussion

Defendant opposes plaintiff's application for a three-judge court on the ground that "no substantial constitutional question is presented".

The Supreme Court in *Hagans v. Lavine, etc.,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), defined the test of "constitutional insubstantiality" in the following terms (415 U.S. at pp. 537–38, 94 S.Ct. at p. 1379):

"Only recently this Court again reviewed this general question where it arose in the context of convening a three-judge court under 28 U.S.C. § 2281:

' "Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," *Bailey v. Patterson,* 369 U.S. [31], at 33 [82 S.Ct. 549, 7 L.Ed.2d 512]; "wholly insubstantial," *ibid.*; "obviously frivolous," *Hannis Distilling Co. v. Baltimore,* 316 [216] U.S. 285, 288 [30 S.Ct. 326, 54 L.Ed. 482] (1910); and "obviously without merit," *Ex parte Poresky,* 290 U.S. 30, 32 [54 S.Ct. 3, 78 L.Ed. 152] (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous;

previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' " *Ex parte Poresky, supra,* at 32 [54 S.Ct. 3, 4] quoting from *Hannis Distilling Co. v. Baltimore, supra,* at 288 [30 S.Ct. 326]; see also *Levering & Garriques Co. v. Morrin,* 289 U.S. 103, 105–106 [55 S.Ct. 110, 79 L.Ed. 688] (1933); *McGilvra v. Ross,* 215 U.S. 70, 80 [30 S.Ct. 27, 54 L.Ed. 95] (1909).' *Goosby v. Osser,* 409 U.S. 512, 518 [93 S.Ct. 854, 35 L.Ed.2d 36] (1973).

"The substantiality doctrine as a statement of jurisdictional principles affecting the power of a federal court to adjudicate constitutional claims has been questioned, *Bell v. Hood,* 327 U.S. 678, 683 [66 S.Ct. 773, 90 L.Ed. 939] (1946), and characterized as 'more ancient than analytically sound,' *Rosado v. Wyman, supra,* [397 U.S. 397] at 404 [90 S.Ct. 1207, 25 L.Ed.2d 442]. But it remains the federal rule and needs no re-examination here, for we are convinced that within accepted doctrine petitioners' complaint alleged a constitutional claim sufficient to confer jurisdiction on the District Court to pass on the controversy." 415 U.S. 537–538, 94 S.Ct. 1379.

■ Treating plaintiff's motion as an application for a preliminary injunction (although it is not expressly denominated as such) and the defendant as a "state officer" as to which no questions have been raised, the sole question for determination at this time is whether plaintiff's claim is obviously without merit or such that its unsoundness so clearly results from the previous decisions of the Supreme Court as to foreclose the subject and leave no room for inference that the question sought to be raised can be the subject of controversy. *Ex parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78

L.Ed. 152 (1933); see also *Nieves v. Oswald,* 477 F.2d 1109 at p. 1112 (2d Cir. 1973).

█ In support of their contentions with respect to this issue, both parties cite and rely on various Supreme Court decisions—the plaintiff on *National Association for the Advancement of Colored People v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 45 (1963), invalidating a state statute making it a crime for an organization to advise another person that his legal rights have been infringed and refer him to a particular attorney or a group of attorneys for assistance; *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), striking down a Virginia statute prohibiting the sale or circulation of any publication encouraging abortions; *Brotherhood of Railroad Trainmen v. Virginia State Bar,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89, *rehearing denied* 377 U.S. 960, 84 S.Ct. 1625, 12 L.Ed.2d 505 (1964), holding that the First and Fourteenth Amendments protected the rights of union members, through their brotherhood, to maintain and carry out a plan for advising injured members to obtain legal advice on recommending specific lawyers; *United Mine Workers of America v. Illinois State Bar Association,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967), holding that the First and Fourteenth Amendments gave the unions the right to hire attorneys on a salaried basis to assist union members in the assertion of their legal rights; and *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971), holding that such amendments permitted the union to solicit damage suits from its members, and the defendant on *Semler v. Oregon State Board of Dental Examiners,* 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935), upholding an Oregon law prohibiting advertising by dentists; and *Toole v. Michigan State Board of Dentistry,* 316 U.S. 648, 62 S.Ct. 1299, 86 L.Ed. 1731 (1942); *Orwitz v. Board of Dental Examiners,* 313 U.S. 546, 61 S.Ct. 1088, 85 L.Ed. 1512 (1941); and *Brown v. Massachusetts,* 308 U.S. 504, 60 S.Ct. 96, 84 L.Ed. 432 (1939), upholding similar state laws and *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), upholding an Oklahoma statute prohibiting the advertising of optical appliances.

More specifically, defendant claims that in the *Bigelow* case relied upon by the plaintiff, the Supreme Court "reaffirmed" the *Semler* decision in footnote 10 in the following language:

"Our decision also is in no way inconsistent with our holdings in the Fourteenth Amendment cases that concern the regulation of professional activity. See *North Dakota Pharmacy Bd. v. Snyder's Stores,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Head v. New Mexico Board,* 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Barsky v. Board of Regents,* 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1954); *Semler v. Dental Examiners,* 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935)." 95 S.Ct. at 2234.

Plaintiff, on the other hand, claims that the *Semler* line of cases is inapplicable to the type of services as to which he proposes to advertise, namely: "public interest" or "politically expressive" litigation in the antitrust, securities, civil rights,* etc. fields. As to this type of litigation and advertising with respect thereto, plaintiff argues that the *Button* and *Bigelow* cases have, in effect, carved out an exemption which falls within the protection of the First Amendment and which is without the scope of legitimate regulation by a State.

Thus, plaintiff also says that the New York statutes and rules prohibiting advertising by an attorney should be declared unconstitutional in their entirety because of their overbreadth. Viewed in this light, plaintiff claims that it is immaterial whether (as defendant argues) advertising with respect to some or even all of his existing or proposed services may "be regulated by a

---

* In his complaint plaintiff does not refer to this type of litigation, i. e., civil rights. However, he makes reference thereto in his brief and presumably could readily amend his complaint to include the same if it were required that he do so.

138

statute drawn with the requisite narrow specificity" (*Bigelow v. Virginia, supra,* 95 S.Ct. at p. 2229) since plaintiff must be given "standing to challenge [the] statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute." (*Id.* at p. 2230).

Thus, according to the plaintiff, even if this Court were to regard plaintiff's proposed program as "commercial advertising" for "commercial" purposes, there still remains the question whether the New York statutes and rules do not unconstitutionally proscribe advertising of services and litigation of a public interest or political type or nature which may be protected by the First Amendment.

We have only recently been told by the Supreme Court in *Bigelow* that (95 S.Ct. at p. 2235):

"The Court has stated that 'a State cannot foreclose the exercise of constitutional rights by mere labels.' *NAACP v. Button,* 371 U.S., at 429, 83 S.Ct. 328 at 336. Regardless of the particular label asserted by the State—whether it calls speech 'commercial' or 'commercial advertising' or 'solicitation'—a court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation. The diverse motives, means, and messages of advertising may make speech 'commercial' in widely varying degrees. We need not decide here the extent to which constitutional protection is afforded commercial advertising under all circumstances and in the face of all kinds of regulation.

"The task of balancing the interests at stake here was one that should have been undertaken by the Virginia courts before they reached their decision."

On this ground alone, therefore, there would appear to be a substantial constitutional question which must be determined by a three-judge court.

Moreover, the fact is that, while research has disclosed that the United States Supreme Court has upheld the constitutionali-

ty of state regulation and banning of advertising in other professions, there do not appear to be any comparable decisions with respect to state statutes banning and regulating advertising by attorneys. Indeed, the cases relied upon by the plaintiff cited above appear to be the closest in point on this question and, as indicated, if anything, they tend to support the position of the plaintiff and not that of defendant.

Under the circumstances it would appear that, in any event, even if plaintiff's proposed services be not regarded as politically expressive or in the public interest, plaintiff has raised and presented substantial constitutional claims which may only properly be determined by a three-judge court.

Plaintiff has also advanced arguments denominated as procedural and substantive Due Process claims. It is not necessary at this juncture to determine whether they are constitutionally insubstantial or not in the light of the foregoing. Parenthetically it might be noted that to this Court they seemed considerably weaker in their present form than plaintiff's principal arguments. In this connection these claims were not really put in issue before this Court, defendant having only made passing reference thereto. Plaintiff may wish to expand on one or more of these contentions before the three-judge court and in this Court's view should, if he wishes, be permitted to do so.

Accordingly, the Chief Judge of the Circuit is being asked to designate two other judges pursuant to 28 U.S.C. § 2284(1) to form a court for the determination of the afore-indicated issues.

Motion for Order of Abstention or Stay

PER CURIAM

■ Prior to the hearing by this three-judge Court on plaintiff's motion for a preliminary injunction, defendant cross-moved for an order of abstention or, in the alternative, for an order staying this action on the ground that there were a number of actions raising the same (or similar) issues as are raised by plaintiff herein now pending in various Federal courts and on the further

ground that a Standing Committee on Ethics and Professional Responsibility of the American Bar Association anticipates issuing a final report with respect to the advisability of modifying the disciplinary rules promulgated under Cannon 2 of the ABA Code of Professional Responsibility with respect to advertising by attorneys to the House of Delegates at the meeting of that body scheduled to be held in August of 1976.

The Court has also been informed that the New York State Bar Association has scheduled public hearings on the issue of advertising by lawyers in New York on March 15th, in Albany on March 22nd and in Rochester on March 30th, and the President of the New York State Bar Association has indicated that this issue would probably be placed before the Association's House of Delegates at its April 23–24 meeting.

The Court has further taken note of the fact that there is pending before the United States Supreme Court the case of *Virginia Citizens Consumer Council v. State Board of Pharmacy,* 373 F.Supp. 683 (1974) argued No. 74–895 (U.S. Nov. 11, 1975), wherein a three-judge panel in the Eastern District of Virginia invalidated a Virginia statute which prohibited pharmacists from advertising drug prices on the ground that the statute violated the First Amendment to the United States Constitution.

Under all of these circumstances the Court believes that the defendant's alternative cross-motion for an order staying this action should be granted to the extent that the hearing on plaintiff's motion for a preliminary injunction should be and the same hereby is adjourned to May 14, 1976 at 2:00 P.M., and at or about such date the Court will again consider the question whether a further adjournment is in order or whether the hearing should proceed at that time.

SO ORDERED.