express no view as to the appropriate dispositions for these charges.

In view of the foregoing, we affirm the adjudications of juvenile delinquency. However, we reverse and remand the order of disposition to the court below so that it may hold a hearing with respect to the appropriate dispositions to be made and enter an order of disposition in accordance with the procedure set forth· in this opinion.

HUGH E. GREENAN, TREASURER, COUNTY OF HUDSON, ET AL., PLAINTIFFS-APPELLANTS, v. WILLIAM F. HYLAND, ATTORNEY GENERAL, STATE OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1976—Decided March 4, 1977.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Ms. Natalie E. Feehan* argued the cause for appellants (*Mr. Harold J. Ruvoldt, Jr.,* Hudson County Counsel, attorney).

*Mr. Leonard A. Peduto, Jr.,* Deputy Attorney General, argued the cause for respondents William F. Hyland, Attorney General, Brendan T. Byrne, Governor, Ann Klein, Commissioner of Institutions and Agencies (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. Franklin H. Berry, Jr.,* County Counsel, argued the cause for respondent Ocean County.

The opinion of the court was delivered by

MATTHEWS, P. J. A. D. This action was instituted in the Chancery Division, Hudson County, by the County of Hudson, the Treasurer of the county, the members of the Board of Chosen Freeholders for the county, individually and in their official capacities, and the Hudson County Council of Social Agencies, a private, nonprofit organization which coordinates all social services in the county. Defendants include various officers of the Executive Branch of the State Government, the Governor, the Attorney General and the Commissioner of the Department of Institutions and Agencies, individually and in their official capacities, and the remaining 20 counties. The County of Ocean, while nominally a defendant, has appeared and argued as if a plaintiff.

Plaintiffs allege the "Final Comprehensive Social Services Plan," which describes the types of services to be funded in New Jersey under the authorization subsumed in Title XX of the Social Security Act, 42 *U. S. C. A.,* § 1397 *et seq.,* P. L. 93–647, § 2, 88 *Stat.* 2337, published on October 1, 1975 by the Commissioner of the Depart-

ment of Institutions and Agencies, reveals a "disparity between the percentage of funds allocated to social services programs for the benefit of residents of the County of Hudson and the percentage of eligible residents who reside in the County of Hudson * * *." Plaintiffs claim that although the County of Hudson contains between 11% and 15% of the population of the State deemed eligible to receive social services funded through Title XX under the income-level eligibility criteria advanced in the plan, social service programs for the benefit of residents of the county will receive only between 4% and 8% of the total federal appropriations allocated to the State under Title XX. It is contended that this disparity discloses a pattern of invidious discrimination, which bears no rational relationship to a legitimate state interest, in violation of the Equal Protection Clause of *N. J.* Const. (1947), Art. I, ¶ 1, and the Fourteenth Amendment to the United States Constitution, and in contravention of the federal statute, 42 *U. S. C. A.* § 1397(a). Plaintiffs also argue that the Social Services Plan fails to comply with other provisions of the federal statute, 42 *U. S. C. A.* §§ 1397c(2)(I), 1397c (2)(J), 1397(c)(4). For relief, plaintiffs sought (1) a temporary restraining order, prohibiting defendants from implementing the Final Plan until reformed so as to allocate monies to social services programs for the benefit of Hudson County residents in fair proportion to the percentage of eligible New Jersey residents located within the County of Hudson; (2) the issuance of preliminary and permanent injunctions to accomplish the same purpose, and (3) any other relief considered proper.

Defendants State of New Jersey, Brendan T. Byrne, William F. Hyland, Ann Klein and the Department of Institutions and Agencies moved to dismiss the complaint on the ground that the Chancery Division was without jurisdiction to entertain the action or to enter judgment against defendants. The Counties of Passaic, Hunterdon, Morris, Union and Somerset joined in that motion. The County

of Ocean originally joined in the motion but later withdrew. The trial judge transferred the matter on his own motion to the Appellate Division, *R.* 1:13–4(a), since he found that the complaint sought judicial review of the "action or inaction" of several state administrative officers.

Plaintiffs thereafter renewed their application for emergent relief of the Comprehensive Social Services Plan. *R.* 2:9–7. Plaintiffs also requested a remand of the cause to the Chancery Division for trial. We denied the motions. Plaintiffs then petitioned the Supreme Court for leave to appeal from our order withholding preliminary injunctive relief. The motion was denied.

The New Jersey Comprehensive Social Services Plan for Fiscal Year 1976 (Plan) provides for the expenditure of $116,088,361 in federal, state and local funds in the delivery of 23 social services to eligible residents of the State. Federal monies, authorized and appropriated under Title XX, constitute the major part (75% or $87,750,000) of the financing for the program. The State has contributed $12,696,578, county and municipal public agencies $11,326,665, and private donors $4,314,938, to form the "local match" for the generation of federal reimbursement, 42 *U. S. C. A.* § 1397a. (a)(1). The State anticipated that services would be furnished to approximately 396,279 individuals in fiscal year 1976.

Title XX consolidates the administration of social services programs and federal financial assistance formerly provided to the states under Title IV–A of the Social Security Act, 42 *U. S. C. A.* § 601 *et seq.,* Aid to Families with Dependent Children (AFDC), and Title VI of the Social Security Act, 42 *U. S. C. A.* § 801 *et seq.,* Grants to States for Services to Aged, Blind, Or Disabled (SSI). Services are provided to eligible recipients by the county welfare boards, the district offices of the Division of Youth and Family Services, various other divisions and departments of the State Government (through interdepartmental

and intradepartmental agreements) and private agencies under purchase of service contracts.

Title XX expanded the classification of eligible recipients and the range of beneficial services that a state might furnish with matching federal funds. Under Title IV–A, 42 *U. S. C. A.* §§ 602(a)(13), (a)(14), (a)(15)(A), (a)(19)(G), § 606(d) and accompanying federal regulations, 45 *C. F. R.* §§ 220.15 to 220.24, social service plans of participating states, to warrant federal reimbursement, 42 *U. S. C. A.* § 603(a)(3)(A), were required to provide eight "mandatory" services to AFDC recipients or applicants and former or anticipated AFDC recipients and applicants who met specified eligibility criteria based upon income level. These services for families and children included employment assistance (45 *C.F.R.* § 220.17), child care services (45 *C.F.R.* § 220.18), foster care (45 *C.F.R.* § 220.19), prevention and reduction of out-of-wedlock births (45 *C.F.R.* § 220.20), family planning (45 *C.F.R.* § 220.21), services to meet particular needs of families and children (45 *C.F.R.* § 220.22), protective services, (45 *C.F.R.* § 220.23), and services related to health needs (45 *C.F.R.* §§ 220.24, 220.52). Under Title VI, 42 *U. S. C. A.* §§ 802(a)(8), (a)(11)(A), 805, and federal administrative rules enacted pursuant thereto, 45 *C.F.R.* §§ 222.41 to 222.47, states could seek reimbursement, 42 *U. S. C. A.* § 803(a)(1), for seven social services afforded to current SSI recipients or applicants or former or anticipated SSI beneficiaries. A schedule of optional services for which reimbursement was available was likewise contained in the regulations. The passage of Title XX, however, was not accompanied by the appropriation of additional monies above the annual national funding limit of $2.5 billion set by Congress in the Revenue Sharing Act of 1972 for Fiscal Year 1973, 42 *U. S. C. A.* § 1397a. (a)(2)(A). In Fiscal Year 1973 social service expenditures in New Jersey reached the ceiling level of federal reimbursement established by the statutory distribution formula of Title XX.

Title XX directs that services be provided towards the attainment of five national goals, 42 *U. S. C. A.* § 1397a.(a)(1). The national goals seek to encourage the recipient to maintain or achieve economic self-support (42 *U. S. C. A.* § 1397a.(a)(1)(A)), to eliminate the stigma of welfare dependency (42 *U. S. C.* § 1397a.(a)(1)(B)), to protect the interests of children and adults unable to care for themselves against "neglect, abuse, or exploitation" (42 *U. S. C. A.* § 1397a.(a)(1)(C)), to reduce inappropriate institutional treatment by making possible modalities of less intensive care, 42 *U. S. C. A.* § 1397a.(a)(1)(D)), and to furnish institutional care and services where other forms of treatment are not feasible (42 *U. S. C. A.* § 1397a.(a)(1)(E)). Apart from the specification of the service goals and the prescription of certain minimum program requirements, see 42 *U. S. C. A.* §§ 1397a.(a)(4), 1397b.(d)(1), 1397c., the states are accorded "maximum flexibility in designing and operating their social services program * * *." *Senate Report No. 93–1356, 1974 U. S. Code Cong. & Admin. News* 8133, 8138–8139.

In the implementation of this broad grant of authority New Jersey has elected to offer a total of 23 social services in its Comprehensive Plan, and has selected five priority areas for upgrading the qualitative and quantitative aspects in the delivery of services. These areas and their funding levels for Fiscal Year 1976 include: services to the aged ($10,245,666), developmental day-care services for children ($37,815,551), family planning services ($4,558,161), services to prevent and treat the neglect, abuse and exploitation of children ($7,508,739), and community-based services as alternatives to institutional living ($11,586,667). Approximately $70.4 million, or nearly 60% of the Fiscal year 1976 allocation, was devoted to these priority areas in which expenditures have increased markedly. The crucial element in the Plan's structure is the realization of the policy objective of greatly expanding tangible service delivery to re-

cipients to complement those generalized casework services which formerly predominated.

Eligibility for subsidized services is determined by a formula linking the putative recipient's income level to a certain percentage of state median income. Information and referral services, as well as all protective services, are available to applicants therefor without regard to income. In compliance with the provisions of 42 *U. S. C. A.* § 1397a. (a) (5), 42 *U. S. C. A.* § 1397a. (a) (6) and 45 *C. F. R.* § 228.62, minimal fees are charged for placement services, parole supervision services, nonexempt protective services, child day-care services for intact families, and family planning services.

In the development of an allocation plan for Fiscal year 1976, the Department of Institutions and Agencies conducted an intensive examination of a variety of indicators of service needs. Planners placed principal reliance upon census data, supplemented by perceptions of service needs solicited from numerous local public and private agencies.

Plaintiffs contend that defendants' Plan violates Title XX because it fails to allocate available funds for the benefit of the neediest eligible residents, allegedly the goal mandated by Title XX itself. In effect, plaintiffs are arguing that providing services to non-Hudson County residents who earn 80% or more of the median state income when there are Hudson County eligible recipients who earn only 60% of the median state income, is a violation of Title XX.

The short answer to this argument is that one of the major purposes of Title XX was to produce just such a result, *i. e.,* to permit funding to blind, aged and disabled rather than to younger, healthier, albeit "poorer" people. 42 *U. S. C. A.* § 1397a. (a) (5) (B). The constitutionality of just such a plan was upheld in *Jefferson v. Hackney,* 406 *U. S.* 535, 92 *S. Ct.* 1724, 32 *L. Ed.* 2d 285 (1972).

Since Congress explicitly permitted allocation of Title XX funds under 42 *U. S. C. A.* § 1397a. (a) (5) (B) (i) to eligible recipients who are not in the lowest 60% income bracket, *i. e.,* those in the next 20% bracket of state median income (or in

some programs in a higher bracket), New Jersey not only can, but should, carry out such a directive. Accordingly, we conclude that the statutory obligation of the State created by 42 *U. S. C. A.* 1397a., and in particular by subsection (a) (4), is fulfilled by the Plan.

Plaintiffs next contend that the 1976 Plan issued by the Department violates *N. J. Const.* (1947) Art. I, par. 1, and the fourteenth Amendment of the Federal Constitution since it denies certain Hudson County residents the equal protection of the law. We disagree.

Relying upon statistics furnished by the State, plaintiffs claim that Hudson County should receive between 11% and 15% of the total federal funds distributed under Title XX because its residents allegedly constituted that portion of the State's eligible recipients of nine selected services as delineated by the State. Appellants allege that under the Plan they will receive only 8.33% of the total federal funds allocated to the State for provision of such services, with the result that needy people in Hudson County are less likely to receive necessary monies than residents of counties who will get a share greater than they are entitled to receive; therefore, these Hudson County residents are being denied equal protection of the law.

Plaintiffs argue that Hudson County eligible participants, *as a class,* are getting less than their fair share of benefits because the funding per needy person in Hudson County is substantially less than in other counties based on the State's statistics.

The State challenges the classification used by plaintiffs. The Department asserts that it has elected to treat the entire State as the relevant "geographic" and classification area for the allocation of Title XX funds, pursuant to the discretionary power conferred under 45 *C. F. R.* §§ 228.8, 228.25 (a). These funds are allegedly distributed in conformance with a neutral income-eligibility formula and relevant needs assessments throughout the State, viewed as a single unit. The State contends that all eligible residents of the

State are afforded a similar opportunity to receive a social service benefit and that therefore it is incorrect for appellants to assert that the proper classification is a county-wide group of eligible and needy residents.

The State asserts, without contradiction, that the $87,850,000 Title XX federal funding available is sufficient to meet only a fraction of the needs the funds are designed to satisfy. In addition, almost $200,000,000 from other sources outside Title XX are used to help satisfy these needs. Thus, the State must make difficult decisions in the allocation of these funds among an oversupply of "equally" needy and eligible people. All of the available money, however, is being spent to assist eligible recipients.

Plaintiffs urge that both a fundamental right, the right to travel, and a suspect classification, income, are involved in this case. They urge that citizens are less likely to move to Hudson County since their chance of getting social service benefits in Hudson County is less than if they lived in a different New Jersey county where the ratio of dollars per needy individual is higher. We find no merit to this argument considering the record before us. First, it is obviously speculative and too tenuous for judicial determination and, second, no durational residency requirement conditions eligibility for receipt of Title XX benefits. See *Memorial Hospital v. Maricopa Cty.*, 415 *U. S.* 250, 261–262, 94 *S. Ct.* 1076, 39 *L. Ed.* 2d 306 (1974); *Shapiro v. Thompson*, 394 *U. S.* 618, 634–635, 89 *S. Ct.* 1322, 22 *L. Ed.* 2d 600 (1969). The enabling federal enactment itself expressly forbids imposition of durational residency criteria as conditions precedent to participation in a state's program for the provision of social services. 42 *U. S. C. A.* § 1397 (b) (d) (1) (e).

Ordinarily, in the review of statutes or programs involving welfare allocations. if the State is able to demonstrate "a rational relationship to a legitimate state interest or purpose." the courts will uphold the State's law or program since they recognize that primary responsibility for making these difficult decisions must rest with the State Legislature

and through delegation of authority to executive and administrative agencies. As was stated in *Jefferson v. Hackney*, 406 *U. S.* 535, 92 *S. Ct.* 1724, 32 *L. Ed.* 2d 285 (1972):

This Court emphasized only recently, in *Dandridge v. Williams*, 397 *U. S.* 471, 485, 90 *S. Ct.* 1153, 1161, 25 *L. Ed.* 2d 491, 501 (1970), that in "the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." A legislature may address a problem "one step at a time," or even "select one phase of one field and apply a remedy there, neglecting the others." *Williamson v. Lee Optical Co.*, 348 *U. S.* 483, 489, 75 *S. Ct.* 461, 465, 99 *L. Ed.* 563, 573 (1955). So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional strait-jacket. The very complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them. [at 546–547, 92 *S. Ct.* at 1731]

In *Robinson v. Cahill*, 62 *N. J.* 473 (1973), the court, dealing with equal protection notions on the state level, observed that the state standard might be stricter than the federal test:

* * * Ultimately, a court must weigh the nature of the restraint or the denial against the apparent public justification, and decide whether the State action is arbitrary. In that process, if the circumstances sensibly so require, the court may call upon the State to demonstrate the existence of a sufficient public need for the restraint or denial. * * * [at 492]

However, the court then refused to uphold the trial judge who had predicated his rejection of the state education financing plan on equal protection grounds:

We hesitate to turn this case upon the State equal protection clause. The reason is that the equal protection clause may be unmanageable if it is called upon to supply categorial answers in the vast area of human needs, choosing those which must be met and a single basis upon which the State must act. * * * [at 492]

█ Plaintiffs have not shown any statutory source to support their claim of "entitlement" to a share of Title XX

monies, determined in light of the proportion of eligible residents residing in a particular county to the total eligible population in the State. Nor has it been established that individuals residing in Hudson or Ocean County, or any other county for that matter, who are deemed otherwise eligible to receive a social service financed under Title XX, have been denied the salutary benefit of that service or have been compelled to endure a disproportionate share of the burden caused by a rapid depletion of available funds. In the absence of a classification, equal protection analysis should proceed no further.

Income eligibility is not the conclusive factor in the service delivery decision. Rather, income eligibility must be considered in conjunction with the need displayed by the recipient for particular services. For example, an elderly person, qualified to receive SSI benefits, may require homemaker services or the provision of nutritious meals to avoid unproductive institutionalization but at the same time will not demonstrate a demand for family planning services or alcoholism treatment for which he or she is also eligible by reason of insufficient income. The nature of the service addresses a particular need of an impoverished person and not the income deficiency assisted by the categorical maintenance programs such as AFDC or SSI.

Similarly, plaintiffs have failed to establish in their constitutional argument a cogent, analytical framework within which the scope and content of the safeguards extended by equal protection may be translated persuasively into fiscal terms, *i. e.*, total dollar or *per capita* expenditures under Title XX. Social service costs vary greatly by type of service. Therefore, the total amount of federal, state and local funds, pledged under Title XX and expended in any arbitrarily defined geographic sub-unit, does not accurately reflect either the total amount of social services provided or the number of eligible persons served. In short, there is no concrete allegation that individual beneficiaries who live in Hudson or Ocean County are in a different position than

20

beneficiaries who reside elsewhere in the State. Consequently, plaintiffs' constitutional challenge founded upon underinclusiveness cannot be sustained.

We have no hesitancy in concluding where, as here, statewide allocation of services to eligible recipients is effected through various programs under certain defined and rational standards, defendants' method of disbursing federal funds for the provision of Title XX services in its 1976 Plan does not, under any test, violate *N. J. Const.* (1947), Art. I, par. 1, or the Fourteenth Amendment of the United States Constitution.

Finally, we find no merit to plaintiffs' arguments that the Plan violates the provisions of 42 *U. S. C. A.* § 1397c.(2) (I), 42 *U. S. C. A.* § 1397c.(2)(J), 42 *U. S. C. A.* § 1397c. (4), and *N. J. S. A.* 52:14B-1 et seq.

Affirmed