[Civ. No. 9907. Fourth Dist., Div. One. Dec. 4, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ELLER TELECASTING CO. OF ARIZONA, Defendant and Appellant.

## COUNSEL

Thadd G. Baker, Dickenson & Sattinger, Dickenson, Sattinger & Dotson and David R. Dotson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Alvin J. Korobkin, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**AULT, J.**—Based upon a complaint filed by the district attorney pursuant to Business and Professions Code section 3131, and upon a written stipulation of fact, the Superior Court of Imperial County issued a preliminary injunction against the defendant, Eller Telecasting Company of Arizona (Eller), the pertinent portion of which reads: "IT IS HEREBY ORDERED, adjudged and decreed that the defendant ELLER TELECASTING CO. OF ARIZONA, an Arizona corporation, its employees, servants and agents, be and are hereby perpetually enjoined and restrained from transmitting from the State of Arizona into the State of California advertisements for MESA OPTICAL COMPANY, an Arizona corporation, or any optical company, advertising that glasses, optical services, and the furnishing of lenses, glasses, and the frames or fittings therefor, can be purchased at a stipulated price."

The primary statute in question, section 3129 of the Business and Professions Code, provides: "It is unlawful to advertise at a stipulated price, or any variation of such a price, or as being free, any of the following:

"The examination or treatment of the eyes; the furnishing of optometrical services; or the furnishing of a lens, lenses, glasses, or the frames or fittings thereof.

· "The provisions of this section do not apply to the advertising of goggles, sun glasses, colored glasses or occupational eye-protective devices, provided the same are so made as not to have refractive values."

Section 3131 of the same code, under which this action was brought, read as follows at the time of the commencement of the action: "In addition to other proceedings provided for in this chapter, whenever any person has engaged, or is about to engage, in any acts or practices which constitute, or will constitute, an offense against this chapter, the superior court in and for the county wherein the acts or practices take place, or are about to take place, may issue an injunction, or other appropriate order, restraining such conduct on application of the board, the Attorney General, or the district attorney of the county.

"The proceedings under this section shall be governed by Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, except that no undertaking shall be required in any action commenced hereunder."

The facts as revealed by the written stipulation are: (1) Eller, a telecasting company, is an Arizona corporation, producing television programs and advertising which it transmits over Station KBLU, Channel 13, for which it holds a Federal Communications Commission license.

(2) Since 1966 Eller has maintained a television transmitting tower on Black Mountain which is located in Imperial County, California.

(3) All of Eller's programming emanates from Arizona. Live programs originate in its studio in Yuma, Arizona, are transmitted to the Black Mountain tower and there re-transmitted to viewers in Arizona, Mexico and Imperial County. Network programs are relayed from Phoenix to Eller's studio in Yuma, transmitted to Black Mountain and re-transmitted to viewers in Arizona, Mexico and Imperial County.

(4) Eller maintains no television studios in California, but it does have a sales office, employing one salesman, located in El Centro, California. It derives 7 percent of its income from local Imperial County advertisers; 93 percent of its income comes from Arizona, regional and network programming.

(5) Mesa Optical Company is a business organization engaged in the business of filling optometric prescriptions for optometrists and ophthalmologists. It does business only in the State of Arizona and does not engage in mailorder business in any way. It has one office in Flagstaff, one in Yuma, one in Mesa, two in Tucson and four offices in Phoenix.

(6) The advertising program of Mesa Optical Company, as produced by Station KBLU in Yuma, Arizona, is in full compliance with the laws of the State of Arizona. Some of the advertising of Mesa Optical Company advertises optometrical services and eye protective devices at a fixed price.

(7) Mesa Optical Company does not do business in the State of California, and to revise its advertising program to conform to the objections of the State of California in the Yuma, Arizona area alone would cause great expense and additional costs to the company. Its advertising program is designed, intended and directed to the population of the entire State of Arizona, and to require it to alter its advertising program for the Yuma area only would cause the company great financial hardship.[1]

Eller has appealed from the judgment granting the preliminary injunction and asserts the following contentions on appeal:

I. It was the intent of the California Legislature that the sections of the Business and Professions Code upon which the injunction was issued regulate the practice of optometry and not the broadcasting and transmitting of advertisements by a television station.

---

[1]As to the facts contained in paragraph (7), the district attorney stipulated that if a qualified officer of Mesa Optical Company were called as a witness, he would testify to these facts from his own knowledge and from the books and records of the company. Since the statement is not refuted, and appears reasonable, we accept it as true.

II. The injunction is unconstitutional because it deprives Eller from engaging in a lawful business activity and results in a restriction of freedom of the press.

III. Under the factual situation of this case, the injunction constitutes an undue burden on interstate commerce. The case of *Head* v. *The Board of Examiners,* 374 U.S. 424 [10 L.Ed.2d 983, 83 S.Ct. 1759], which is relied upon by the People is not controlling.

IV. The court exceeded its jurisdiction in the injunction granted by making the injunction broader than the allegations contained in the complaint and the facts as set forth in the stipulated facts.

We have concluded appellant's third contention on appeal is well taken, must be upheld, and requires a reversal of the judgment.

Article I, section 8, clause 3, of the United States Constitution provides: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;" ■ The "commerce clause" was designed to establish equality among the several states as to commercial rights and to prevent the confusion which local jealousies or interests might be disposed to introduce and maintain. (*Veazie* v. *Moor,* 55 U.S. (14 How.) 568, 574 [14 L.Ed. 545, 548].) Its purposes have been stated to be, ". . . to create an area of free trade among the several States." (*Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 U.S. 157 [98 L.Ed. 583, 74 S.Ct. 396, 403]), and ". . . to protect commercial intercourse from invidious restraints, to prevent interference through conflicting or hostile state laws and to insure uniformity in regulation." (*Commonwealth of Pennsylvania* v. *State of West Virginia,* 262 U.S. 553 [67 L.Ed. 1117, 43 S.Ct. 658, 665, 32 A.L.R. 300].)

Under the agreed facts there can be no doubt appellant Eller's television station is engaged in interstate commerce, and respondent does not contend otherwise. It is also apparent the injunction issued by the Imperial County Superior Court imposes a restraint upon that commerce. That fact alone, however, is not determinative. ■ "State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand." (*Huron Portland Cement Co.* v. *City of Detroit, Mich.,* 362 U.S. 440, 448 [4 L.Ed.2d 852, 859, 80 S.Ct. 813, 818].) ■ The provisions of the Business and Professions Code regulating optometry and proscribing fixed price advertising in California are a legal exercise of this state's police power reasonably related to the public health and welfare. (*Williamson* v. *Lee Optical of Oklahoma,* 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461, 465].) Applied indiscriminately to pro-

scribe fixed price advertising by "any person" within the State of California the statutes do not impose an unconstitutional burden on interstate commerce. (*Head* v. *New Mexico Bd. of Exam. in Optometry,* 374 U.S. 424, 429 [10 L.Ed.2d 983, 988, 83 S.Ct. 1759, 1763].) It is the application of the statutes, by means of the superior court's injunction, to proscribe acts in Arizona, completely legal in that state, which creates the conflict and disruption and casts the undue burden upon interstate commerce.

To uphold the injunction, the Attorney General relies upon *Head* v. *New Mexico Bd. of Exam. in Optometry, supra,* which he asserts is directly in point, controls the instant case and is based upon facts almost identical to those involved here. We disagree. While *Head* presented a similar question for determination and was based upon New Mexico statutes much like the California laws under consideration, the factual situation involved in this case and that presented in *Head* are as opposite as "heads and tails."

In *Head,* action was brought in the New Mexico state court to enjoin Head, a New Mexico newspaper owner, and Permian Basin Radio Corporation, a New Mexico corporation operating a radio station in New Mexico, from accepting or publishing *within the State of New Mexico,* a Texas optometrist's advertising of optometrical goods and services at a fixed price. Both the newspaper and the radio station were located in Hobbs, New Mexico, but served an area immediately across the border in Texas as well. Texas had no statute proscribing fixed price advertising by optometrists. New Mexico statutes, similar to but broader than those in California, prohibited such advertising. The trial court restrained and enjoined the defendants " 'from accepting or publishing within the State of New Mexico advertising of any nature from Abner Roberts [the optometrist] which quotes prices or terms on eyeglasses . . . or which quotes moderate prices, low prices, lowest prices, guaranteed glasses, satisfaction guaranteed, or words of similar import. . . .' " (*Head* v. *New Mexico Bd. of Exam. in Optometry, supra,* 374 U.S. 424, 427 [10 L.Ed.2d 983, 987, 83 S.Ct. 1759, 1762].)

The Supreme Court of New Mexico affirmed (*New Mexico Bd. of Examiners in Optometry* v. *Roberts,* 70 N.M. 90 [370 P.2d 811]). The Supreme Court of the United States noted probable jurisdiction (371 U.S. 900 [9 L.Ed.2d 163, 83 S.Ct. 207]). It also affirmed the judgment granting the injunction (*Head* v. *New Mexico Bd. of Exam. in Optometry, supra*), but its holding was carefully limited to the facts existing in the case which was before it. In that connection the Supreme Court stated: "We hold that the New Mexico statute, as applied here *to prevent the publication in New*

*Mexico* of the proscribed price advertising, does not impose a constitutionally prohibited burden upon interstate commerce." (*Head* v. *New Mexico Bd. of Exam. in Optometry,* 374 U.S. 424, 429 [10 L.Ed.2d 983, 988, 83 S.Ct. 1759, 1763].) (Italics supplied.)

We think the Supreme Court's ruling in *Head* gives no indication it would approve the injunction issued in this case by which Eller, a telecasting corporation located in the State of Arizona, is restrained "from transmitting from the State of Arizona into the State of California" advertisements which are completely legal in the state of their origin.

The action taken here by the superior court involves an extension of the ruling in *Head,* an extension which is unwarranted by the holding of the case and which encroaches into the very area which the concurring opinion warned was not encompassed by the decision. "Our holding today intimates no view of the constitutionality of several other superficially similar forms of state regulation of broadcasting. First, nothing here said suggests that a system of state regulation, although not in direct conflict with federal law, would pass muster if it were so pervasive and so burdensome upon broadcasters as to interfere substantially with the overall purposes of federal regulation. [Citation] Second, nothing said answers the problem of the situation, factually closer to that at bar but legally quite distinct, which would be presented if a State in which nationwide network material originates sought to restrict network advertising under a statute enacted for the protection only of that State's consumers. Such regulation might well exceed the scope of the State's legitimate interests and involve a constitutionally illegitimate attempt to control communications beyond its borders. [Citations] Third, nothing said here may be read to sustain the constitutionality of applications of local advertising regulations which threaten to make it impossible for a local station to transmit network broadcasts because of their sponsorship." (*Head* v. *New Mexico Bd. of Exam. in Optometry,* concurring opinion of Mr. Justice Brennan (374 U.S. 447-448 [10 L.Ed.2d 998-999, 83 S.Ct. 1759, 1772]).)

While not precisely within the categories specified in the concurring opinion, the injunction here works the very mischief which the opinion warned would result if an attempt were made to extend the rule of the case beyond the facts then before the court. It requires little imagination to foresee the confusion and conflict which would arise if one state were permitted to impose its individually adopted statutes to bar the transmission of television programs originating in another state. ■ The variety of restrictions and requirements which could result emphasizes our conclusion the injunction issued results in an unconstitutional use of the statutes and imposes an undue burden on interstate commerce.

Moreover, it is apparent the injunction issued by the California court imposes a direct and discriminatory burden upon Eller because it is engaged in interstate commerce. Others engaged in advertising in Arizona, including radio and television stations located in Phoenix, Tucson and Flagstaff, may accept and publish advertisements similar to those placed by Mesa Optical Company so long as such programs are not transmitted across the California state line. The State of Arizona could not similarly discriminate between those engaged in intrastate and interstate advertising within its own borders. (*Huron Portland Cement Co.* v. *City of Detroit, Mich., supra,* 362 U.S. 440, 448, 80 S.Ct. 813, 818.) Irrespective of the fact Eller uses a transmission tower located in Imperial County, California, and sells 7 percent of its advertising to residents of that county, we believe the injunction issued by the superior court must fall, because it constitutes an unwarranted state interference with, and imposes an undue burden upon, interstate commerce.

What we have said requires a reversal of the judgment and makes it unnecessary to discuss the other issues raised by appellant.

The judgment is reversed; the case is remanded to the trial court with directions to enter judgment for the defendant.

Coughlin, Acting P. J., and Whelan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 28, 1971.