**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**ANTHONY COMPANY, et al., Defendants.**

**No. 81 C 1716.**

United States District Court, N. D. Illinois, E. D.

June 18, 1982.

See also, D.C., 537 F.Supp. 1048.

---

## SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Pension Benefit Guaranty Corporation ("PBGC") sues Anthony Company ("Anthony") and its parent company M. S. Kaplan Company ("Kaplan") under Section 4062 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1362,[1] to recover the vested but unfunded benefits under Anthony's pension plan (the "Plan") as of the time of its termination. This Court's April 27, 1982 memorandum opinion and order (the "Opinion") denied Kaplan's motion for dismissal from the Complaint and ordered Kaplan to respond to PBGC's partial summary judgment motion. 537 F.Supp. 1048.

Kaplan then filed a very brief response, taking the position that PBGC's motion was premature because of the open factual issues identified in the Opinion. PBGC has filed its reply memorandum in support of its own motion. For the reasons stated in this memorandum opinion and order, PBGC's motion is denied.

This opinion is really a supplement to the Opinion because PBGC essentially seeks to reargue the issues decided in the Opinion under the guise of its motion. In the first instance it again refers to "the economic benefits that naturally flow from such ownership" of Anthony stock by Kaplan as the predicate for summary judgment as to liability. That argument was *not* bought by this Court when it wrote the Opinion, for this Court held due process demanded *direct* financial benefit as the price for imposing Section 1362 liability on Kaplan. Neither party has yet addressed the issue of how much *if any* direct financial benefit Kaplan

has received. It would be a contradiction in terms to grant PBGC summary judgment as to liability when Kaplan's liability may be zero.

PBGC's other arguments are no more persuasive in the context of its partial summary judgment motion than they were when this Court held Section 1362 could be unconstitutional as applied to Kaplan. Indeed PBGC is simplistic in lecturing the Court about its proper role vis-a-vis Congress under such familiar cases as *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 18–19, 96 S.Ct. 2882, 2894–2895, 49 L.Ed.2d 752 (1976), or about the corresponding balance of function between federal courts and state legislators under such cases as *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). This Court is highly sensitive to its role in determining whether any legislative judgment crystallized in a statute is consistent with due process. It did not reach its conclusion in the Opinion lightly or without full deliberation.

In fact PBGC would do well to note that *Congress* did not mandate the result for which PBGC argues. It was rather the *Regulations* authorized by Congress that did so, even though the Regulations could have been drafted to avoid the due process violation found by this Court. This is particularly true in terms of the problem posed by this case: a corporate acquisition taking place *after* a pension plan was already adopted and *before* ERISA created a previously unknown and unanticipated concept of personal liability for future contributions. There would have been nothing to prevent the Secretary of the Treasury, in whose expertise Congress reposed its confidence, from defining parent corporation liability in terms of parent company benefits. That would have been responsive both to the congressional mandate and to the constitutional due process mandate. Under the circumstances PBGC cannot claim to wrap itself in the mantle of a Congress unjustly subverted by a federal court.

---

1. All further statutory citations in this supplemental opinion will be to Title 29 rather than to ERISA's internal numbering.

Indeed, in terms of the *statute* we are confronted with two provisions whose principal focus was not exactly the same, but that are capable of interacting in a totally arbitrary and unreasonable manner because of the flawed Regulations. Anyone who has practiced in the ERISA field knows that the definition of "employer" in Section 1301(b)(1) was expressed in broad form primarily to prevent the then-familiar practice of discriminating in pension plan *coverage* by creating separate corporate entities—or put differently, to preclude companies from the selective assignment of employees to different corporations, though the employees were within the same economic entity in real-world terms, in an effort to avoid the requirement that highly-paid employees not be favored by such plans. But the *termination* provision aims primarily at a somewhat different problem: as stated more extensively in the Opinion, to prevent premature termination of a plan by an employee's real employer so as to frustrate the employee's reasonable expectations as to pension benefits.

Those two goals may of course coincide in many circumstances, but in many they do not. *P.B.G.C. v. Dickens* (see nn. 5 and 17 of the Opinion) illustrates the outrageous lengths to which the Regulations as literally applied would go. It should be emphasized again that Congress left the shaping—the fine tuning—to the Secretary of the Treasury. It was the experts' job to draft the Regulations in a way that would accomplish the congressional goals without doing violence to reason in the way discussed in the Opinion and exemplified by *Dickens.* Though *Dickens* is paradigmatic, it only illustrates the problems dealt with at length in the Opinion.

PBGC's motion for partial summary judgment is denied. As to its alternative motion for certification under 28 U.S.C. § 1292(b), PBGC has made no showing "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." There is nothing in the record to justify a piecemeal appeal. That motion is denied as well.