

# The Attorney General of Texas

November 10, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Charles K. Winston, Jr.
Executive Director
Automated Information Systems
    Advisory Council
P. O. Box 13564
Austin, Texas    78711

Opinion No. JM-93

Re:    Whether the Automated
Information Systems Advisory
Council may prohibit its
employees from taking outside
employment

Dear Mr. Winston:

You have asked whether the Automated Information Systems Advisory Council [hereinafter AISAC] may prohibit its employees from taking outside employment. Your specific questions are as follows:

> Can a policy be set that an employee will not be allowed to hold another job without the approval of the executive director? Can an agency have a policy that an employee may not hold another job, while working for them?

AISAC was created in 1981. Acts 1981, 67th Leg., ch. 737, at 2701; V.T.C.S. art. 4413(32h). The only references to AISAC employees in this law are the following:

> [3.]  (b)  A member of the council or employee of the council may not be interested in, or in any manner connected with, any contract or bid for furnishing any state governmental body with automated information systems, the computers on which they are automated, or a service related to the automation of information systems or the computers on which they are automated. A member or employee of the council may not be employed by any state governmental body as a consultant on automated information systems, the computers on which they are automated, or a related service. A member or employee of the council, under penalty of dismissal, may not accept or receive from any person, firm, or corporation to whom any contract may be awarded, directly or indirectly, by rebate, gift, or otherwise, any money or other thing of

value, and may not receive any promise, obligation, or contract for future reward or compensation from any such party.

.  .  .  .

8. The council may employ persons necessary for it to perform its functions.

The threshold question in this instance is whether the AISAC possesses statutory authority to adopt the suggested policies. Administrative agencies have "only such powers as are expressly granted to [them] by statute together with those necessarily implied from the authority conferred or duties imposed." Stauffer v. City of San Antonio, 344 S.W.2d 158, 160 (Tex. 1961). Because the authority to adopt the proposed policies has not been expressly conferred upon the AISAC, we may conclude that this authority exists only if it is among the "powers. . . necessarily implied from the authority conferred or duties imposed" upon this agency. Id.

The AISAC is authorized to "employ persons necessary for it to perform its functions." V.T.C.S. art. 4413(32h), §8. In our opinion, a necessary concomitant of the authority to employ persons needed by an agency to perform its duties is the power to adopt reasonable employment policies calculated to insure the achievement of this objective. If the AISAC adopts the suggested policies and those policies are subsequently challenged, we cannot guarantee that a court would find them to be reasonable; whether or not a particular policy is "reasonable" obviously depends upon a variety of factors including the scope of policy, the justification for the policy, and its effect upon those it reaches. At the same time, however, we cannot conclude that the suggested policies would be found unreasonable as a matter of law. If the policies are carefully drafted and an adequate showing of need for them can be made, we believe that they would be found to be authorized under the agency's implied powers.

The next question is whether the suggested policies would pass constitutional muster. In Gosney v. Sonora Independent School District, 603 F.2d 522 (5th Cir. 1979), the court of appeals for the Fifth Circuit dealt with a blanket prohibition against outside employment to which the school district had subjected its employees. Although the court found that the rule had not been uniformly applied, and hence contravened the equal protection clause, it also held that the policy did not deny the employees substantive due process. It stated:

[W]e find that such a rule, tested by the standard of rationality, Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 487-88, 75 S.Ct. 461, 99

L.Ed. 563 (1955), is reasonably related to the legitimate state interest in assuring that public school employees devote their professional energies to the education of children. The policy takes steps to effectively remove from school employees the temptation to drain professional efforts into the furtherance of their own business interests on the rational premise that persons engaged in outside businesses will tend to have less time and interest and to be less responsive to the demands of their jobs than they would were school teaching or administration their sole occupation. The fact that the policy does not determine on an individualized, more precise basis whether the employee was in fact devoting his or her energies substantially to the school system does not mean that the objective of assuring such professional commitment was not rationally furthered by the no-outside-employment rule. (Footnote omitted).

Id. at 526.

Just as we cannot make a conclusive determination regarding the "reasonableness" of the suggested policies, we cannot guarantee that the policies would be found constitutional under the Gosney test. Gosney establishes that, if challenged on substantive due process grounds, a blanket prohibition against outside employment can be upheld if it can be shown to be reasonably related to some legitimate governmental interest. Thus, whether the AISAC could successfully defend the suggested policies against constitutional attack would depend upon whether it could articulate a legitimate governmental interest in promulgating the policies and whether it could demonstrate that the particular policies in question are reasonably related to that interest. An example of a policy that would, in our view, clearly pass muster under this test would be one that only prohibits outside employment that would create a conflict of interest. A policy authorizing outside employment with the approval of the executive director could also be successfully attacked if it did not contain adequate standards to guide the director in the exercise of his discretion. Finally, as in Gosney, the policies could be successfully challenged if misapplied.

## S U M M A R Y

AISAC policies prohibiting employees from taking outside employment or prohibiting them from doing so without the approval of the executive

director would not be unreasonable or unconstitutional as a matter of law.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
David Brooks
Nancy Sutton
Bruce Youngblood