The NEWSSTAND, INC., Kwik Park Corporation and Kaiserman Enterprises

v.

CITY OF PHILADELPHIA, et al.

Civ. A. No. 83–3441.

United States District Court, E.D. Pennsylvania.

Jan. 24, 1984.

Henry Stein, Alan Kessler, William H. Eilberg, Philadelphia, Pa., for plaintiff.

Barbara Gilbert, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

The plaintiffs seek a declaratory judgment that Section 9–205 of the Philadelphia Code, which provides for the licensing and regulation of sidewalk vendors, violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Because I find that Section 9–205 is constitutional on its face and as applied, I will grant the defendants' motion to dismiss the complaint.

The allegations of the complaint, which must, of course, be accepted as true in ruling on a motion to dismiss, may be summarized as follows: The plaintiffs operate businesses on premises that they lease or own in Center City Philadelphia. They have certain rights and responsibilities with respect to the sidewalks abutting these premises.[1] Sidewalk vendors operate on the sidewalks abutting the plaintiffs' busi-

---

1. Under Pennsylvania law, owners of a real     property abutted by streets generally possess a

nesses without obtaining the consent of the plaintiffs. The vendors' operations harm the plaintiffs' businesses by, among other things, impairing access to the businesses, blocking public view of advertising and displays in the plaintiffs' establishments, impairing customer parking, causing trash to accumulate on the sidewalk, and producing obnoxious odors. These vendors are licensed by the defendants pursuant to the provisions of Section 9–205. The defendants know or have reason to know that the vendors will set up their operations on the plaintiffs' property without obtaining the plaintiffs' consent.

The plaintiffs contend that Section 9–205 is unconstitutional on its face, in that it deprives them of property without due process of law, thus violating the Fourteenth Amendment of the Constitution. A cursory reading of the section demonstrates the error of the plaintiffs' position.

Section 9–205 of the Philadelphia Code [2] is clearly an effort by the City of Philadelphia to deal with some of the problems engendered by sidewalk vending, primarily sidewalk congestion and litter. Section 9–205 regulates the size of the stands used by vendors and the placement of these stands on the sidewalk. It prohibits all vending on certain major thoroughfares and requires vendors to provide trash receptacles and to clean up their areas when they leave. Finally, in what is obviously an effort to facilitate enforcement of Section 9–205's substantive provisions, vendors are required to obtain a license before vending. Prerequisites to obtaining a license are minimal, and are clearly designed only to aid in the identification of the vendors.[3] An applicant for a vending license must pay a small fee, provide two small photographs of himself, provide proof of identity and address, a physical description of himself, a brief description of the goods to be sold, and the identity of his employer, if any.

The plaintiffs claim that this modest attempt to regulate sidewalk vendors is constitutionality unsound because it does not require license applicants to specify the location at which they intend to vend, to obtain the permission of the owners of the property abutting the proposed location, or limit the vending to that location.

While the plaintiffs are correct that Section 9–205 has no such requirements, this failure does not render it unconstitutional.[4] Section 9–205 as it is written, and as it has been construed, clearly does not deprive the plaintiff of any property interest. This section does not explicitly or by any reasonable implication grant licensed vendors the right to vend on private property over the objections of the property owner.[5] Furthermore, by its own terms, it does not in any way detract or add to the pre-existing rights of abutting property holders.[6]

fee extending to the center of that street. This fee is subject to an easement for public use that allows for the maintenance of streets, sidewalks, sewers and other public necessities. *RKO–Stanley Warner Theatres, Inc., v. Mellon Nat'l Bank & Trust Co.,* 436 F.2d 1297 (3d Cir.1970). It will be assumed for the purposes of this motion that plaintiffs do own or lease property extending to the center of the street abutting their premises and that sidewalk vending is not an activity that falls within the scope of the easement for public use.

2. The full text of this section is attached as an appendix to this opinion.

3. One exception is the requirement that an applicant who intends to sell food take an examination to determine that the applicant has no communicable diseases. *PHILADELPHIA, PA., CODE § 9–205(4)(a)(.4).*

4. The plaintiffs have alternatively claimed that if Section 9–205 is construed to contain the above requirements the defendants unconstitutionally fail to enforce them. Because I do not believe that Section 9–205 requires applicants to identify their proposed place of business or to obtain permission to operate from abutting property holders, and because I also do not believe that this renders the section unconstitutional, both of the plaintiffs' alternative claims must fail.

5. The plaintiffs argue that by prohibiting all vending on certain major thoroughfares, Section 9–205 implicitly gives vendors an entitlement to vend anywhere else. Such an interpretation is unreasonable, and clearly contrary to the general principal that courts will construe legislation, if possible, in order to avoid conflict with the Constitution.

6. Section 9–205(10) provides as follows:
(10) Construction:
No part of this Section or the Section itself shall be construed to be in amplification or

Abutting property holders possess the same right to move against vendors operating on their property without permission as they do against any other trespasser. At least one Pennsylvania court has enjoined a vendor from further operations on the sidewalk abutting the premises of a non-consenting property owner and rejected the argument that Section 9–205 granted the vendor an entitlement to vend wherever he pleased. That court stated that it was

> constrained to reject the contention of defendant that Section 9–205 constitutes a *general grant* by the municipality of *permission* to vendors to set up stands on public sidewalks regardless of the objections of the owner of the abutting property; we read the section to have been intended merely as a *restriction* placed by the municipality on the potential blockage of public passage on sidewalks inherent in the existence of sidewalk stands. As such, the section is merely a regulation by the municipality, issued incident to its police powers in the interest of protecting the public safety, and this restriction on the use of sidewalks is in *addition* to, rather than an eradication of, the aforementioned right of an owner of abutting property to prevent a conflicting private use of his land.

*City of Philadelphia v. Street,* 63 D. & C.2d 709, 713–14 (C.P.Phila.1974).

Thus it is extremely hard to understand just what it is that plaintiffs claim has been taken away from them by Section 9–205. If, for instance, this Court were to strike down Section 2–905, it is difficult to see how the plaintiffs' position would in any way be improved. The result would simply be that there would be no general regula-tions governing sidewalk vending. The plaintiffs would have no remedy for vendor trespasses that they do not now have, and would have lost whatever protection is provided by Section 9–205. Because I cannot see how Section 9–205 has deprived the plaintiffs of any property interest, I do not see how Section 9–205 can be found to be in violation of due process.[7]

The plaintiffs' allegation that the existence of Section 2–905 may encourage vendors to trespass on plaintiffs property does not enable plaintiffs to withstand the defendants' motion to dismiss. The plaintiffs' reliance on *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967) to support this position is misplaced. In *Reitman* the Supreme Court found that a California constitutional amendment prohibiting any agency of the state from interfering with the decision of an individual to sell, lease, or to refuse to sell or lease real property to any other individual violated the United States Constitution. The Supreme Court examined the history of the amendment and its effect on preexisting California law. It concluded, as had the California Supreme Court, that the amendment was not simply a repeal of existing laws forbidding private racial discrimination, but rather that it was a law clearly intended to authorize racial discrimination in housing. The Court held that the amendment so significantly involved the state of California with invidious discrimination that it was rendered unconstitutional.

As has previously been noted Section 2–905 does not authorize trespassing by vendors nor can it rationally be said that the purpose of Section 2–905 is to permit or encourage vendors to trespass on private property.[8]

---

derogation of the rights or responsibilities of abutting property owners. Any remedy, right or obligation provided to such owners of property or their successors in interest under the Law of Real Property or the Laws of the Commonwealth of Pennsylvania shall be in addition to the remedies, rights, obligations or penalties provided hereunder.

7. The plaintiffs appear to concede, as they obviously should, that the regulation of sidewalk vending through Section 9–205 does not convert the actual trespasses by individual vendors into state action, thus placing the vendor's action within the ambit of the Fourteenth Amendment. It is clear that there is not a sufficiently close nexus between the state and any trespass by a vendor to fairly treat the action of the vendor as that of the state. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

8. The plaintiffs point out that a predecessor Section 2–905 required the approval of abutting owners before the granting of a license to vend food. The plaintiffs used this fact to attempt to draw an analogy between *Reitman* and the

One final argument of the plaintiffs must be addressed. The plaintiffs imply that Section 9–205(9)(c)(.3) requires that defendants, before issuing or reviewing a vendors license, determine that the consent of the appropriate property owner be obtained.[9] The plain meaning of the language of this section certainly does not compel such a construction. Therefore I need not address the issue of whether the City's alleged failure to vigorously enforce such a requirement could be held to violate the plaintiffs' constitutional rights.

In conclusion, it is important to remember that the issue before me is not whether the protections sought by the plaintiffs are needed or would be good public policy. The only issue before me is whether the failure of the City to include the proposed requirements in Section 9–205 renders that regulation unconstitutional. I cannot conclude that the failure of the City of Philadelphia to address every problem caused by sidewalk vending is an omission of constitutional dimensions.[10] The plaintiffs' remedy clearly does not lie with the federal judiciary, but rather lies either with the state court or with the Philadelphia City Council.

(Bill No. 158)

**AN ORDINANCE**

Repealing the ordinance approved December 29, 1975 (Bill 2182), and repealing Section 9–205 of the Philadelphia Code, relating to sidewalk sales and adding new provisions regulating sidewalk sales.

WHEREAS, The Council of the City of Philadelphia finds that the unrestricted sale of goods, wares and merchandise on City sidewalks constitutes an impediment to, interference with and a nuisance to pedestrians on the sidewalks, and interferes with the rights of ingress, egress, light, air, view of and access to the abutting property owners, and therefore is a public nuisance; and

WHEREAS, The Council of the City of Philadelphia finds that there is a substantial public benefit in limiting the sale, display and offering for sale of such goods, wares and merchandise on the City sidewalks under standards set forth in this Ordinance; now therefore

*The Council of the City of Philadelphia hereby ordains:*

SECTION 1. Section 9–205 of the Philadelphia Code, relating to sidewalk sales is hereby repealed and the following sub-sections relating to sidewalk sales are added as follows:

§ 9–205 Sidewalk Sales.

(1) Definitions: In this Section, the following definitions apply:

(a) Stands. Any stand, showcase, table, bench, rack, cart, stall or any other fixture or device whatever which is used for the purpose of displaying, exhibiting, carrying, transporting, storing or offering for sale, or the selling of any goods, wares or merchandise upon the sidewalk;

(b) Goods, Wares and Merchandise shall include but not be limited to vegetables,

---

present case. The court in *Reitman* made it very clear that the mere repeal of a statute prohibiting discrimination would not have been unconstitutional. It was only when the state "authorized" or "encouraged" such discrimination that it became unconstitutional. In this case, the City simply repealed a provision that gave property owners certain protections against certain trespassing vendors, a constitutionally permissible act. It has not "encouraged" or "authorized" such trespasses.

9. Section 9–205(9)(c)(.3) reads as follows:
   (c) In addition to the penalties contained in (9)(a) and (b), any license issued under this Section may be suspended or revoked for any of the following reasons: ....
   (.3) Conducting the business of vending under this Section in such a manner as to create

a public nuisance, cause a breach of the peace or constitute a danger to the public health, safety, welfare or morals or interfering with the rights of abutting property owners.

10. As the late Justice Douglas stated in a much quoted passage:
   Evils in the same field may be of different dimension and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seem most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting others. (Citations omitted).
   *Williamson v. Lee Optical, Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

produce, garden truck, fruits, plants, flowers, pretzels, or food, drinks, ice cream, dairy products, cakes, pies, pastries or candy sold for immediate consumption, leather goods, cosmetics, beauty aids, hair pieces, wearing apparel of any kind, jewelry, ornaments, art work, decorative items, tobacco, or tobacco products, except paper bound or cloth bound books, magazines, periodicals or newspapers only when sold or offered for sale in accordance with and subject to § 9–205(4), § 9–205(5)(a)(b), § 9–205(8)(g) and § 9–208 (reserved);

(c) Sidewalk. All that area legally open to the public use as a pedestrian public way between the curb line and the legal building line of the abutting property;

(d) Vendor. Any person who exhibits, displays, offers for sale or sells any goods, wares or merchandise from any stand while on the sidewalks of the City of Philadelphia. Vendor shall also include any "peddler," "hawker," "huckster," "itinerant merchant" or "transient vendor" whose activities or conduct are not covered by § 9–201 or § 9–203.

(2) Exemptions. The provisions of this Section shall not apply to:

(a) Goods, wares, or merchandise temporarily deposited on the sidewalk in the ordinary course of delivery, shipment or transfer;

(b) The placing and maintenance of stands and other display or sales devices for the sale, display or offering for the sale of newspapers, magazines, periodicals and of paperbound books if sold in compliance with the provisions of § 9–205(4), § 9–205(5)(a), (b), § 9–205(8)(g) and Sect. 9–208 (reserved);

(c) The display and sale of Christmas trees pursuant to a permit issued by the Department during the three weeks prior to December 25.

(3) License. It shall be unlawful for any person to engage in the business of sidewalk selling unless he or she has first obtained a license from the Department of Licenses and Inspections.

(a) Each license issued shall show the name and address of the licensee, the type of license issued, the kind of goods to be sold, the amount of the license fee, the date of issuance, the license number and a photograph of the licensee not less than two inches square nor more than three inches square;

(b) Every license to engage in the business of sidewalk sales shall be issued as of the first day of January of the current calendar year and shall be effective, unless suspended or revoked, until the thirty-first day of December of the same calendar year.

(4) Issuance. No license shall be issued unless:

(a) the applicant furnishes any relevant information the Department requires, including but not limited to:

(.1) a physical description of the applicant, proof of identity and address, together with two photographs of the applicant, not less than two inches square, nor more than three inches square;

(.2) a brief description of what is to be sold;

(.3) if employed by another, the name and address of the person, firm, association, organization, company or corporation;

(.4) where the applicant-vendor or his employee or attendant proposes to sell anything that is to be eaten or drunk, such investigation or examination as the Department requires establishing that the applicant-vendor or his employee or attendant does not have any communicable diseases;

(.5) the vendor first pays an annual license fee in accordance with § 9–203(3)(b).

(5) Identification and License Plate:

(a) Each vendor while engaged in the business of sidewalk selling shall, while vending under this Section, be required to carry a license on his person. In addition to the license, the Department shall issue a license plate and an identification badge to each vendor. The license plate shall bear the words "Sidewalk Sales," the year for which issued, the number of the license plate which shall correspond to the number which appears on the vendor's license, and

the name of the licensee. The words "Sidewalk Sales" and the license plate number shall be of uniform size and plainly discernible. The license plate shall be attached by the vendor to the stand in a place which is clearly visible to the public. While engaging in the business of vending, every vendor shall wear a badge conspicuously on the right breast of the outer garment. The badge shall be of the shape, size and style prescribed by the Department of Licenses and Inspections having engraved or embossed thereon the words "Sidewalk Sales," the number of the license and the words "City of Philadelphia." The color of the identification badge and the license plate shall be changed at the beginning of each calendar year, however, both shall be the same color for any one year. Identification badges, license plates and licenses shall be used only by the person to whom they were issued or his employee and may not under any circumstances be transferred to any other person.

(b) The Department shall be notified of any change of business address or residence within thirty days, by notice either in writing or in person.

(6) Compliance. All licenses shall be conditioned on continued compliance with the provisions of Title 6 Health Code where applicable as well as with the provisions of this Section.

(7) All licenses will be issued according to regulations established by the Department of Licenses and Inspections.

(8) Prohibited Conduct. No vendor shall:

(a) engage in the business of vending unless his stand is mounted on at least two wheels which have a diameter of not less than eight inches;

(b) use a stand which is propelled by an internal combustion engine;

(c) station, place, set up or maintain his stand on the sidewalk or allow it to remain there except at the curb line for the purpose of selling goods, wares or merchandise therefrom;

(d) station, place, set up or maintain his stand or allow it to remain on any sidewalk if to do so would place him closer than

thirty feet to any other vendor who is vending on the sidewalk if not separated by a public street;

(e) conduct himself or his business in such a way as would:

(.1) substantially restrict, obstruct, interfere with or impede the pedestrian right-of-way;

(.2) substantially restrict, obstruct, interfere with or impede the ingress or egress from the abutting property;

(.3) create or become a nuisance;

(.4) increase traffic congestion, cause or increase traffic delay or hazards;

(.5) cause, create or constitute a danger to life, health or property.

(f) sell food, drinks, ice cream or confections of any kind for immediate consumption unless he has available for public use his own litter receptacle, which shall be clearly marked and maintained for his patrons' use, nor shall any vendor leave any location without first picking up, removing and disposing of all trash or refuse remaining from sales made by him;

(g) use a stand or combination thereof the dimensions of which exceed four feet in width, eight feet in length and eight feet in height;

(h) use any stand which, when fully loaded with merchandise, cannot be easily moved and maintained under control by the licensee, his employee or attendant;

(i) use, set up, attach, place or permit the use of any table, crate, carton, rack, device or structure of any kind to increase the selling or display capacity of his stand;

(j) leave any stand unattended at any time or store, place or leave same overnight on any sidewalk or public way of the City;

(k) Reserved;

(l) engage in the business of vending between twelve midnight and seven A.M.;

(m) station, place, set up or maintain his stand or his goods, wares, or merchandise, or allow them to remain on any part of the sidewalk for sale or display or be sold if to

do so would place the vendor or his goods, wares or merchandise closer than ten (10) feet from the intersection of the legal building line, produced, of intersecting streets or sidewalks, excepting for stands selling newspapers, magazines, periodicals and paperbound books, or reduce the unobstructed pedestrian right-of-way to less than 6 feet.

(.1) The Department of Streets may from time to time by regulation change the width of the pedestrian right-of-way space required, as circumstances require.

(n) engage in the business of vending at any location where the curb have been depressed to facilitate pedestrian or vehicular movement;

(o) be permitted to have more than one licensed stand on any street where vending is permitted;

(p) exhibit, display, offer for sale or sell any goods, wares or merchandise or place or allow any stand to remain on the sidewalks of the following streets or any other location which the Council shall from time to time ordain.

(.1) Arch street, between Front street and the Schuylkill River;

(.2) Armat street, between Germantown avenue and Lena street;

(.3) Broad street, between Vine street and Pine street;

(.4) Chelten avenue, between Wissahickon avenue and Chew street;

(.5) Chestnut street, between Front street and the Schuylkill River;

(.6) Frankford avenue, between Cheltenham avenue and Adams avenue;

(.7) Germantown avenue, between York street and Butler street;

(.8) Germantown avenue, between Coulter street and Washington lane;

(.9) Greene street, between Coulter street and Washington lane;

(.10) Market street, between Front street and the Schuylkill River;

(.11) Pratt street, between Griscom street and Darrah street;

(.12) Walnut street, between Front street and the Schuylkill River;

(.13) Wayne avenue, between Coulter street and Washington lane;

(.14) Woodlawn avenue, between Germantown avenue and Kenyon street;

(.15) Within the area bounded by the Schuylkill river, the right-of-way of the Penn Central Railway and Spring Garden street;

(.16) South side of Market street, between Fifty-first street and Fifty-third street; east and west sides of Fifty-second street, between Market street and Spruce street;

(.17) Columbia avenue, between Tenth street and Twenty-fifth street;

(.18) North and south sides of Baltimore avenue, between Forty-sixth street and Fifty-second street; east and west sides of Forty-ninth street, between Baltimore avenue and Florence avenue; north side of Catherine street, between Forty-ninth street and Fiftieth street;

(.19) Juniper street, between Filbert street and Walnut street;

(.20) East side of Kensington avenue, between Allegheny avenue and Hilton street;

(.21) North side of Market street, between Fifty-first street and Fifty-third street; east and west sides of Fifty-second street, between Market street and Haverford avenue;

(.22) West side of Ogontz avenue, between Spencer street and Church lane;

(.23) Both sides of Ontario street, between Seventeenth street and Eighteenth street;

(.24) North and south sides of Pratt street, between Darrah and Penn streets;

(.25) Broad street, from the south side of I–95 to the Philadelphia Naval Base;

(.26) Within the area bounded by Packer avenue and Terminal avenue, Seventh street and Twentieth street.

(9) Penalties:

(a) The penalty for violation of any provision of this Section or any other applicable

Section of The Philadelphia Code, Philadelphia Traffic Regulations or Ordinances of City Council is, in addition to any other sanctions provided, a fine not exceeding one-hundred (100) dollars for each offense together with revocation or suspension of the vendor's license and imprisonment not exceeding sixty days if the fine and costs are not paid within ten days of imposition. Each violation shall be evidenced by a separate written notice presented at time of citation for offense. A hearing on each violation shall be required before any fines, suspensions or revocations can occur. Each day of violation shall be deemed a separate offense.

(b) In addition to the penalties provided in Section (9)(a), the Department of Licenses and Inspections is hereby authorized, when a uniformed police officer is present to remove any stand, equipment, goods, wares, merchandise or any other article or thing held for sale by any vendor who uses the sidewalk of any street in violation of this Section and refuses to immediately comply with this Section upon written notice of violation and an order to vacate the sidewalk. The vendor shall immediately be notified of the place where his property can be reclaimed and the vendor shall be entitled to immediately claim his property upon payment of the costs of removal.

(c) In addition to the penalties contained in (9)(a) and (b), any license issued under this Section may be suspended or revoked for any of the following reasons:

(.1) fraud, misrepresentation or knowingly false statement contained in the application for the license;

(.2) fraud, misrepresentation or knowingly false statement in the course of carrying on the business of vending under this Section;

(.3) conducting the business of vending under this Section in such a manner as to create a public nuisance, cause a breach of the peace or constitute a danger to the public health, safety, welfare, or morals or interfering with the rights of abutting property owners.

(10) Construction:

No part of this Section or the Section itself shall be construed to be in amplification or derogation of the rights or responsibilities of abutting property owners. Any remedy, right or obligation provided to such owners of property or their successors in interest under the Law of Real Property or the Laws of the Commonwealth of Pennsylvania shall be in addition to the remedies, rights, obligations or penalties provided hereunder.

(11) Severability:

Each of the provisions of this Section is severable, and if any provision is held invalid, the remaining provisions shall not be affected, but shall remain in full force and effect.

SECTION 2. The Ordinance repealing Section 9–205 of The Philadelphia Code (Bill 2182) and adding new provisions regulating sidewalk sales, approved December 29, 1975, is hereby repealed in its entirety.

CERTIFICATION: This is a true and correct copy of the original Ordinance approved by the Mayor on
MAY 28 1976

/s/ Charles H. Sawyer, Jr.
Chief Clerk of the Council