Justice Kennedy,
concurring.
I join the opinion for the Court and add these further observations.
This Court has declared that a taking should be upheld as consistent with the Public Use Clause, U. S. Const., Arndt. 5, as long as it is “rationally related to a conceivable public purpose.” Hawaii Housing Authority v. Midkiff, 467 U. S. 229, 241 (1984); see also Berman v. Parker, 348 U. S. 26 (1954). This deferential standard of review echoes the rational-basis test used to review economic regulation under the Due Process and Equal Protection Clauses, see, e. g., FCC v. Beach Communications, Inc., 508 U. S. 307, 313-314 (1993); Williamson v. Lee Optical of Okla., Inc., 348 U. S. 483 (1955). The determination that a rational-basis standard of review is appropriate does not, however, alter the fact that transfers intended to confer benefits on particular, favored private entities, and with only incidental or pretextual public benefits, are forbidden by the Public Use Clause.
*491 A court applying rational-basis review under the Public Use Clause should strike down a taking that, by a clear showing, is intended to favor a particular private party, with only incidental or pretextual public benefits, just as a court applying rational-basis review under the Equal Protection Clause must strike down a government classification that is clearly intended to injure a particular class of private parties, with only incidental or pretextual public justifications. See Cleburne v. Cleburne Living Center, Inc., 473 U. S. 432, 446-447, 450 (1985); Department of Agriculture v. Moreno, 413 U. S. 528, 533-536 (1973). As the trial court in this case was correct to observe: “Where the purpose [of a taking] is economic development and that development is to be carried out by private parties or private parties will be benefited, the court must decide if the stated public purpose — economic advantage to a city sorely in need of it — is only incidental to the benefits that will be confined on private parties of a development plan.” App. to Pet. for Cert. 263. See also ante, at 477-478.
A court confronted with a plausible accusation of impermissible favoritism to private parties should treat the objection as a serious one and review the record to see if it has merit, though with the presumption that the government’s actions were reasonable and intended to serve a public purpose. Here, the trial court conducted a careful and extensive inquiry into “whether, in fact, the development plan is of primary benefit to ... the developer [i. e., Corcoran Jenni-son], and private businesses which may eventually locate in the plan area \e. g., Pfizer], and in that regard, only of incidental benefit to the city.” App. to Pet. for Cert. 261. The trial court considered testimony from government officials and corporate officers, id., at 266-271; documentary evidence of communications between these parties, ibid.; respondents’ awareness of New London’s depressed economic condition and evidence corroborating the validity of this concern, id., at 272-273, 278-279; the substantial commitment of public *492 funds by the State to the development project before most of the private beneficiaries were known, id., at 276; evidence that respondents reviewed a variety of development plans and chose a private developer from a group of applicants rather than picking out a particular transferee beforehand, id., at 27B, 278; and the fact that the other private beneficiaries of the project are still unknown because the office space proposed to be built has not yet been rented, id., at 278.
The trial court concluded, based on these findings, that benefiting Pfizer was not “the primary motivation or effect of this development plan”; instead, “the primary motivation for [respondents] was to take advantage of Pfizer’s presence.” Id., at 276. Likewise, the trial court concluded that “[t]here is nothing in the record to indicate that... [respondents] were motivated by a desire to aid [other] particular private entities.” Id., at 278. See also ante, at 478. Even the dissenting justices on the Connecticut Supreme Court agreed that respondents’ development plan was intended to revitalize the local economy, not to serve the interests of Pfizer, Corcoran Jennison, or any other private party. 268 Conn. 1, 159, 843 A. 2d 500, 595 (2004) (Zarella, J., concurring in part and dissenting in part). This case, then, survives the meaningful rational-basis review that in my view is required under the Public Use Clause.
Petitioners and their amici argue that any taking justified by the promotion of economic development must be treated by the courts as per se invalid, or at least presumptively invalid. Petitioners overstate the need for such a rule, however, by making the incorrect assumption that review under Berman and Midkiff imposes no meaningful judicial limits on the government’s power to condemn any property it likes. A broad per se rule or a strong presumption of invalidity, furthermore, would prohibit a large number of government takings that have the purpose and expected effect of conferring substantial benefits on the public at large and so do not offend the Public Use Clause.
*493 My agreement with the Court that a presumption of invalidity is not warranted for economic development takings in general, or for the particular takings at issue in this case, does not foreclose the possibility that a more stringent standard of review than that announced in Berman and Mid-kiff might be appropriate for a more narrowly drawn category of takings. There may be private transfers in which the risk of undetected impermissible favoritism of private parties is so acute that a presumption (rebuttable or otherwise) of invalidity is warranted under the Public Use Clause. Cf. Eastern Enterprises v. Apfel, 524 U. S. 498, 549-550 (1998) (Kennedy, J., concurring in judgment and dissenting in part) (heightened scrutiny for retroactive legislation under the Due Process Clause). This demanding level of scrutiny, however, is not required simply because the purpose of the taking is economic development.
This is not the occasion for conjecture as to what sort of cases might justify a more demanding standard, but it is appropriate to underscore aspects of the instant case that convince me no departure from Berman and Midkiff is appropriate here. This taking occurred in the context of a comprehensive development plan meant to address a serious citywide depression, and the projected economic benefits of the project cannot be characterized as de minimis. The identities of most of the private beneficiaries were unknown at the time the city formulated its plans. The city complied with elaborate procedural requirements that facilitate review of the record and inquiry into the city’s purposes. In sum, while there may be categories of cases in which the transfers are so suspicious, or the procedures employed so prone to abuse, or the purported benefits are so trivial or implausible, that courts should presume an impermissible private purpose, no such circumstances are present in this case.
* * *
For the foregoing reasons, I join in the Court’s opinion.